ODOM, Justice.
 

 This is a proceeding brought under the provisions of Act No. 192 of 1920, as amended by Act No. 75 of 1922 and Act No. 120 of 1940, to abate a public nuisance as defined by Section 1 of that act.
 

 Section 1 of the act defines a gambling house as “any place whatever where any game of chance, of any kind or character, is played for money, or for wagers, or for tokens and where the conduct of such place operates, directly or indirectly, to the profit of one, or more, individuals and not exclusively to the direct profit of the actual participants in such game”. Section 2 of the act provides that all such places as defined in Section 1 “are hereby declared to be public nuisances and that the owner of any such place, and the agent for such owner, or the lessee, or sub-lessee or other occupants thereof are declared guilty of maintaining a public nuisance”.
 

 Section 3 of the act, as amended by Act No. 120 of 1940, provides that 10 taxpayers, whether natural or artificial persons, and whether citizens or non-residents, “shall have the right to file a suit in any District Court in this State, or in the Civil District Court for the Parish of Orleans, to abate the nuisance created by such gambling house and to have the owner,, lessee, sub-lessee, agent or other occupant declared guilty of maintaining a public nuisance”.
 

 Section 4 provides that, where the name of the lessee, tenants, or other occupants of any place defined as a gambling house by Section 1 of the act is not known, the action to abate the nuisance shall be brought against the person or persons “in whose name said property stands, at the time such action is filed, upon the assessment books of the parish wherein such place is situated”.
 

 Section 5, as amended by Act No. 75 of 1922, provides that all actions .brought under this act shall be tried in the following manner:
 

 “Upon the filing of any suit the District Judge (whether in term or vacation) shall immediately issue a rule on the defendant to show cause why the nuisance complained of should not be abated and why an injunction should not issue restraining the operation of such gambling house and such rule shall be, at the time of its issue, fixed for hearing not later than five days, (counting Sundays, half-holidays and holidays) from the' date of its issuance; that such rule shall be heard by preference over all other matters and cases fixed for the same day and shall be heard continuously day after day until submitted for adjudication. * * *
 

 “That upon the showing made by the parties on the trial of said rule to show cause the Court shall issue, or shall deny, an injunction without bond,.which injunction, where issued, shall enjoin the owner,
 
 *565
 
 lessee, sub-lessee, tenant or occupant forever from conducting, or being concerned in conducting or operating like public nuisance anywhere within this State.”
 

 Section S provides further thatj in every case where the existence of a nuisance is established in an action under the provisions of the act, an order of abatement shall be entered, and that as a part of the order “it shall be directed that the place where the nuisance, as defined herein, existed shall be effectually closed for one year and shall not be used for any purpose whatsoever during that period”. It further provides that the party cast shall have the right of appeal on giving bond for a sum to be fixed ,by the court, the value of the property involved being made the test of the appellate jurisdiction.
 

 Section 10 of the act, as amended by Act No. 120' of 1940, provides that, where a petition is filed under the act, and such petition is supported by ex parte affidavits “of two reputable citizens”, sworn to before any officer authorized by law to administer oaths, “detailing matters within such affiants’ knowledge and clearly establishing the existence of a nuisance as defined in Section 1 of this act, the court to whom such petition and affidavits is presented shall forthwith issue a temporary restraining order, to be in force until the hearing of the rule to show cause under Section 5 of this act; and said temporary restraining order shall prohibí the use of the place where said nuisance is averred to exist for any purpose, or purposes, whatsoever pending the trial and determination of the said rule to show cause”.
 

 On June 4, 1943, Collins J. Dupuy and 14 other persons, alleging that they were residents and taxpayers of the Parish of Avoyelles, presented to the judge of the district court of that parish a petition, alleging that Frank Tedora, a resident of that parish, operated upon the premises and within a building owned by the Casino Club, Inc., “gambling games of various kinds and particularly, though not exclusively, gambling games of dice, blackjack, numerous slot machines, card games, roulette, etc.; that said establishment is a place where games of chance of various kinds and character are played for money, wagers and tokens, and the conduct of such place operates directly to the profit of said defendant, and not exclusively to the profit of. the actual participants' in the games”.
 

 They further alleged that gambling games have been conducted nightly in said establishment and upon said premises “before and since the 27th day of December, 1942, and February 20, March 20, April 17 and 18, and May 10 and 22, 1943, and have been operating thereafter”. They further alleged that, because of the operation of the gambling games mentioned above upon the said premises, the defendant, Frank Tedora, was guilty of maintaining a public nuisance, in violation of Act No. 192 of 1920, as amended. They further alleged that as citizens and taxpayers of the Parish of Avoyelles they had a right to abate such public nuisance and were entitled to a rule to show cause why the said nuisance should not be abated and why a permanent injunction should not issue, restraining the operation of said gambling house.
 

 
 *567
 
 They further alleged that under Section 10 of the act, as amended by Act No. 120 of 1940, they were entitled to a temporary restraining order without notice and without bond, restraining and prohibiting the use of said building pending the trial and determination of the rule to show cause, and they attached to their petition the ex parte affidavits of Ralph Deville and Cullen C. Dupuy, which affidavits recite “that affiants know that gambling'of various kinds and games of chance of various character are played for money, wagers and tokens in said buildings, premises and club operating directly to the profit of the defendant named in the foregoing petition, and particularly gambling games such as dice, blackjack, slot machines, card games and roulette are operated and conducted on the premises named in the petition”.
 

 The petition was verified by the affidavit of the 15 petitioners, who made oath before a notary public, reciting “That they are the plaintiffs named in the above and foregoing petition; that all of the allegations of fact contained therein are.true and correct”.
 

 Petitioners prayed that a rule’issue, commanding the defendant Frank Tedora to show cause, within five days from the date of the issuance of the rule, why the nuisance complained of should not be abated and why an injunction should not issue restraining- the operation and maintenance of the said gambling house, establishment, and such nuisance.
 

 They further prayed that a temporary restraining order issue, as provided by Section 10 of the act as finally amended.
 

 This verified petition, together with the two ex parte affidavits as mentioned above,, was presented to the Honorable Lester L. Bordelon, judge of the district court, who-refused to issue the rule to show cause, as-required by Section 5 of the act; whereupon the petitioners applied to this court for writs of certiorari, prohibition, and. mandamus, which writs were granted. We-ordered the judge to show cause why the-relief prayed for in the petition should not. be granted.
 

 The district judge made answer to our rule and sent up the entire record, as directed by this court, and the case is now-before us for review.
 

 The respondent judge in his answer sets-forth at considerable length his reasons for refusing to issue the rule to show cause,, as required by Section 5 of the act. He-does not say that he refused to issue the-requested order because in his opinion the act under which the proceeding was brought, or any section or part thereof, is unconstitutional. Therefore, there is no. constitutional question involved in this proceeding.
 

 The judge sets forth his reasons for refusing to grant the requested orders in five separate sections or paragraphs. He says first that, according to his understanding- and appreciation of thfe law, the petition
 
 “must
 
 be supported by the exparte affidavit-of two
 
 reputable
 
 citizens, * * * detailing matters within the knowledge of affiants and clearly establishing the existence of a nuisance as defined in said act * * *_ By a mere glance at the affidavit it is very-evident that there was no compliance with.
 
 *569
 
 the law and Section 10 of said Act, in that the purported affidavit fails to sufficiently ! and distinctly detail- matters within the , knowledge of Dupuy and Deville that gambling was being conducted by Frank Tedora at the Casino Club”. He does not say that Dupuy and Deville are not reputable citizens.
 

 What the judge says about the ex parte affidavits of two reputable citizens relates to Section 10 of the act, which provides that, upon the filing of such affidavits, the judge shall issue a temporary restraining order. The act does not provide that, in order to obtain the issuance of a rule to show cause, the petition itself shall be verified by the ex parte affidavits of two reputable citizens. It provides in Paragraph 6 of Section 5 that the pleading and practice in cases under the act “shall be in accordance with the Code of Practice and the laws and rules of Court governing practice before the District Courts of this State”. Act No. 27 of 1926, which is an act to regulate the pleading and practice in civil causes, provides that in all cases the petition shall be verified by an affidavit to the effect that all of the allegations of fact made therein are true and correct, except those allegations expressly made on information and belief, and that as to these the affiant believes them to be true.
 

 The petition in this case was verified by the affidavit of the IS petitioners and therefore, in this respect, was in accordance with the rules of court.
 

 As to the ex parte affidavits made by Ralph Deville and Cullen C. Dupuy, we think they comply with the provisions of Section 10 of the act. According to the view expressed by the respondent judge, the affidavits failed “to sufficiently and distinctly detail” matters within the knowledge of affiants that gambling was being conducted in the building and on the premises named in the petition. We do not concur in the view of the respondent judge. The two affidavits referred to recite that affiants have read “the foregoing petition to abate the nuisance complained of therein, that all the facts and allegations contained in said petition are true and correct, and that
 
 affiants know that gambling of various kinds and games of chance of various character are played for money, wagers and tokens in the said building, premises and club
 
 [meaning the building, premises, and club mentioned in the petition]”. (Italics are the writer’s.)
 

 These affidavits, we think, are in compliance with the provisions of the statute. Affiants say that they
 
 know
 
 that gambling is being conducted in the house and on the premises mentioned in the petition. It was not necessary for them to go into detail as to how they obtained this knowledge.
 

 The second objection raised by respondent is that the-affidavit of petitioners verifying the allegations of the petition is dated March 1, 1943, and that Paragraph 2 of said petition alleges that gambling existed at the Casino Club on certain dates subsequent to March 1; and the judge says that the petitioner could not know on March 1 that gambling would be conducted at the club thereafter.
 

 In Paragraph 2 of the petition, it is alleged that gambling and games of chance
 
 *571
 
 have been conducted nightly in said establishment and upon said premises “before and since the 27th day of December, 1942”, and one of the specific dates mentioned is February 20, 1943. Affiants could not, of course, know that gambling would be conducted. at the club on the specific dates mentioned in the petition subsequent to March 1. But the allegation in Paragraph 2 of the petition that gambling had been conducted at the club “nightly” before and since December 27, 1942, was sufficient to set out a cause of action, and therefore petitioners were entitled to the issuance of a rule to show cause, as provided in Section 5 of the act. The irregularities suggested by the respondent should be considered on the trial of the rule to show cause.
 

 One of the reasons assigned by the respondent judge as to why he refused to issue the order is set out in the third paragraph of his answer, which reads as follows: “Because, the Court knew at the time of the presentation of said suit to him that both affidavits had been circulated by a certain
 
 silent
 
 and unseen individual who is the main instigator of this suit, for selfish and politcial reasons and to vent his spleen on this defendant because of personal animosity to him due to past trouble and differences between them.”
 

 In Paragraph 5 of his return, respondent said; “ * * * I felt then as I feel now, I would be violating my oath as a Judge to continue signing orders over and over again to close Tedora and others, knowing as I do the real motives underlying the entire matter. Some of the petitioners as well as the
 
 hidden
 
 instigators have serious charges pending against them at this time, such as extortion, larceny, simple assault, disturbing the peace, etc.”
 

 He says further in Paragraph 5: “In the Court’s opinion and from what I personally know of this place, it is a high class Night Club operated by good people, the principal owner thereof, being now in the military service of the United States. It is patronized by the best and finest people from all over Avoyelles and Rapides Parish. The sons and daughters of our best and finest people patronize this Club. Husbands and wives visit there. It is the regular meeting place of the Lions Club and they entertain there monthly. Prominent parish, Civic and fraternal as well as business organizations entertain there.”
 

 He says further in Paragraph 5 that it is possible as well as probable that gambling has existed at intervals in business and amusement places, and that “Such conditions have existed since our ancestors first set foot on Avoyelles Parish soil. Its people are predominantly French, they love to work and play and if you try to infringe on their personal liberties, they don’t take kindly to it.”
 

 Obviously, the respondent’s main reason for refusing to issue the rule applied for was that in his opinion, based as he says on his own personal knowledge of the facts, the defendant was not “guilty of maintaining a public nuisance” at the Casino Club, Inc.
 

 Section 3 of this act, under which this proceeding was brought, specifically confers upon citizens the right to file suit to
 
 *573
 
 abate a public nuisance created by a gambling house, and the question whether their allegations that such nuisance does in fact exist are true or untrue is one which the judge cannot decide until after the case is tried. If their petition sets out a cause of action, their cause must be heard.
 

 Section 6, Article I of the Constitution (the Bill.of Rights) provides: “All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay.”
 

 The refusal of a judge to permit a citizen to come into his court for the purpose of having his cause heard and decided because in his opinion the citizen has no case —which opinion is based on the judge’s asserted personal knowledge of the facts— is a clear violation of the Constitutional mandate that “All courts shall be open” to persons in order that they may have redress for the injuries done them and shall have “adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay”.
 

 The “due process of law” provision in the Constitution is designed to exclude oppression and arbitrary power from every branch of the government. “ ‘Due process of law,’ in judicial proceedings, means a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the conduct and enforcement of private rights.” See Due Process of Law, in 13 Words & Phrases, Perm.Ed., p. 584. It means that no person shall be deprived of life, liberty, property, or of any right granted him by statute, unless the matter involved shall first have been adjudicated against him upon trial conducted according to established rules regulating judicial proceedings. It forbids condemnation without a hearing.
 

 It has been said by many courts that “due process of law” and the “law of the land” mean the same thing. Daniel Webster, in the course of his argument in the case of Trustees of Dartmouth College v. Woodward, 17 U.S. 518, 4 Wheat. 518, 4 L.Ed. 629, gave a definition of “law of the land” and “due process of law” which has received the sanction of the courts. He said: “By the ‘law of the land’ is clearly intended the general law, which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial.” (Quotation from 24 Words & Phrases, Perm.Ed. p. 429.)
 

 The respondent judge in this proceeding, in effect, decided relators’ case against them without giving them a hearing.
 

 For the reasons assigned, the writs heretofore granted by us in this case are perpetuated and made absolute, and accordingly the Honorable Lester L. Bordelon, Judge of the Twelfth Judicial District Court for the Parish of Avoyelles, is ordered to issue the rule to show cause as prayed for by relators.