84 So.2d 80 (1955)
Mrs. Cecile T. PARKER, d/b/a Louisiana State Barber College, Plaintiff-Appellant,
v.
BOARD OF BARBER EXAMINERS, Defendant-Appellee.
No. 4092.
Court of Appeal of Louisiana, First Circuit.
November 22, 1955.
Rehearing Denied December 30, 1955.
*82 Oliver P. Schulingkamp, New Orleans, for appellant.
Emile M. Weber, Baton Rouge, for appellee.
*83 TATE, Judge.
These proceedings concern the power of a State administrative agency to revoke approval of a barber college without an administrative hearing, which agency approval is necessary to the school's existence.
Petitioner, Mrs. Cecile Parker, doing business as the Louisiana State Barber College, filed this rule against the Board of Barber Examiners, praying for stay of an order disapproving her school as an authorized barber college, and for judgment in due course annulling said order and reinstating Louisiana State Barber College as an authorized barber school. Petitioner appeals from judgment of District Court denying the relief sought after trial on the merits.
Upon her husband's death in 1950, petitioner (herself an authorized barber and teacher) continued to run the Louisiana State Barber College, which had received consistent approval from the Board of Barber Examiners during its previous almost twenty years of existence. The record indicates that during the latter part of 1953, the Board felt that petitioner was not maintaining the curricula or standards required by statute and its rules and regulations. In the course of a Board meeting held at the college on October 6, 1953, primarily to examine applicants for barber training, these matters were called to petitioner's attention, and certain improvements were requested. In January 1954, the Board sent petitioner a letter stating that by action taken at the January Board meeting "the school is disapproved until such time as you comply with the necessary curriculum governing barber schools". However, certain adjustments were immediately made, and the school was reapproved and continued in operation, the Board continuing to approve applications of students to enter the school and to maintain regular inspection of the premises and the attendance.
The record is devoid of any further notice to petitioner of deficiency, formal or otherwise, until petitioner received a registered letter dated February 16, 1955, or more than a year later. This letter stated: "it becomes necessary at this time to disapprove the school" for certain specified violations.
Simultaneously, the Board sent a registered letter to each of the school's 10-15 students stating in part: "You are hereby notified that the Louisiana State Barber College is being disapproved this date. Any student who attends the school after this date will do so at his own risk, and will be liable to having charges preferred for working without a license"; which, as counsel for petitioner observed, "resulted in these students fleeing the plaintiff's school as they would the plague".
To simplify the legal issues, it should be observed that as to the Board meeting of October, 1953 (the only one at which petitioner was present when the matters giving rise to this litigation were discussed), the Board's Secretary himself testified it was only a "general discussion, * * * on a friendly basis", an "informal situation". This meeting, or others of which petitioner had no advance notice and at which she was not present, could not be a "hearing" in the legal or constitutional sense, lacking notice and reasonable opportunity to be heard concerning specified issues, Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; 73 C.J.S., Public Administrative Bodies and Procedure, § 132Elements and Essentials of Hearing in General, p. 456.
Petitioner alleges that she has been deprived without a hearing of a valuable property right in this going barber college which had been in existence 23 years, and urges: (1) the order of the Board disapproving her school is void because she did not receive the notice and hearing allegedly required by the statute regulating the subject; or (2) if (as the Board contends) the statute does not require such hearing, then she has been deprived of her property without due process of law in contravention of Art. 1, Section 2, La. Constitution-LSA, and U. S. Constitution, Fourteenth Amendment, since "due process" requires a hearing before she is deprived of her property.
*84 Barbering is a business affecting the public health, safety, and welfare which the Legislature may constitutionally regulate under its police power, Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 182 So. 485. The Legislature has comprehensively exercised this constitutional power in several enactments consolidated and incorporated as Chapter 5, "Barbers", of Title 37, Sections 341 et seq., LSA-Revised Statutes of 1950. Administration of these regulations is entrusted to the Board of Barber Examiners.
It is illegal to practice barbering, or serve as apprentice to a barber, without a "certificate of registration" issued by the Board pursuant to certain statutory requirements, LSA-R.S. 37:349. As a necessary preliminary to receive such certifiates, inter alia, an applicant must have "graduated from a school of barbering approved by the board", LSA-R.S. 37:355.
The statute further provides: "No school of barbering shall be approved by the board" unless certain specified admission, curriculum, and instruction requirements are met, LSA-R.S. 37:357.[1]
Although in the remaining portion of Part I. "Licensing and Regulation", Sections 341-376 inclusive, there are provisions concerning suspension, revocation, or refusal to issue or to renew "certificate of registration" as barber or apprentice, LSA-R.S. 37:365, but only after "notice in writing" and "public hearing", LSA-R.S. 37:366, there is no further reference in the statute to approval or revocation of approval of barber schools, although several other sections manifest that barber schools are subject to regulation by the Board.[2]
In urging that the regulatory statute requires a hearing with reasonable notice before issuance of an order, and that the order herein is invalid since it failed to *85 comply with these statutory prerequisites,[3] petitioner chiefly relies on LSA-R.S. 37:414 "Investigations", which provides:
"The practice and procedure of the board with respect to any investigation by the board authorized by this Part shall be in accordance with rules and regulations promulgated by the board, which shall provide for a reasonable notice to all persons affected by orders to be made by the board after the investigation, opportunity to be heard either in person or by counsel, and opportunity to introduce testimony in their behalf at a public hearing held for that purpose." (Italics ours).
However, the Board correctly urges that these statutory requirements apply only to investigations authorized under "this Part", that is, Part II, "Unfair Competition and Trade Practices" LSA-R.S. 37:411 through 425. This section does not apply to Part I, "Licensing and Regulation", in which is contained provisions relative to approval of barber colleges.[4]
Thus the statutory regulations do not provide any mandatory requirement for notice and hearing before approving or disapproving barber colleges. And, it may be added, they do not contain any specific provision for judicial review of actions of the Board in regard to such matters; for the only section of the entire Chapter pertaining to judicial review is LSA-R.S. 37:421, contained also in Part II, and specifically limited to "Any applicant or licensee * * * aggrieved by any action of the board taken under any of the provisions of this Part * * *." (i. e., Part II.)
On behalf of the Board, it is argued that the Board has exclusive authority to approve or disapprove schools of barbering, and that "this is a power solely within the discretion of the Board and not even subject to judicial review". This argument has the demerit of overlooking Article 1, Section 6, La.Const., which provides: "All courts shall be open, and every person for injury done him his rights, lands, goods, person or reputation shall have adequate remedy by due process of law". Such a construction would render the statutory provision unconstitutional; Meyer v. Board of Trustees, 199 La. 633, 6 So.2d 713.
On the other hand, petitioner urges that in order to satisfy the constitutional requirement *86 of "due process", it is sacramental that one affected be given a formal notice of specific charges and a formal hearing with opportunity to present favorable testimony and to question unfavorable testimony, before an order is issued by an administrative agency.
It is true that due process necessitates a hearing before final action, that all shall have their "day in court". "The `due process of law' provision in the Constitution is designed to exclude oppression and arbitrary power from every branch of the government. * * * It means that no person shall be deprived of life, liberty, property, or of any right granted him by statute, unless the matter involved shall first have been adjudicated against him upon trial conducted according to established rules regulating judicial proceedings. It forbids condemnation without a hearing", Dupuy v. Tedora, 204 La. 560, 15 So.2d 886, at page 890. "`Due process of law in its procedural aspect requires a notice and opportunity to be heard in an orderly proceeding adapted to the nature of the case, in accord with established rules'", Vaughan v. Housing Authority of New Orleans, La.App., 80 So.2d 561, 565.
But we do not feel that the "due process" requirement is the constitutional strait-jacket claimed by petitioner; that an administrative agency may never issue an order affecting the private right of an individual subject to its regulation without formal notice and hearing before such order. The due process requirement may also be satisfied if a full hearing in the courts is available after the administrative order, with judicial power to stay irreparable injury to him affected.
The Legislature "may prescribe a procedure in which the initial order is upon legislative or wholly administrative consideration [without hearing] and the full hearing is afforded in a [subsequent] court action. If the court proceeding includes the full right to present evidence, to meet issues, and to explore the evidence and conclusions of the legislative or administrative agent, due process of law exists. * * * However, if the state procedure consists of administrative consideration without hearing, and court consideration merely by way of review of the determination below without new evidence or exploration by cross-examination, a federal court will set aside the final order as without due process", Jordan v. American Eagle Fire Ins. Co., 83 U.S.App.D.C. 192, 169 F.2d 281, at page 290. See 42 Am. Jur. 474-5, Verbo "Public Administrative Law", Section 135, "Necessity for Notice and Hearing"; 73 C.J.S., Public Administrative Bodies and Procedure, § 130 Notice and Hearing, pp. 452, 454-455.
We further agree with the Board that the Legislature constitutionally delegated to it the power to determine whether or not barber colleges possessed the specific requirements prescribed by the Legislature as a prerequisite for approval (LSA-R.S. 37:357; see footnote 1 above). "`The authority of the Legislature to delegate to the administrative boards and agencies of the state the power and authority of ascertaining and determining the facts upon which the laws are to be applied and enforced cannot be seriously disputed'", State ex rel. Porterie v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725, at page 739; cited and approved in Hunter Co. Inc., v. McHugh, 202 La. 97, 11 So.2d 495. See also National Bank of Commerce in New Orleans v. Board of Supervisors, 206 La. 913, 20 So.2d 264.
Nor is the Act unconstitutional for failure to provide in the Act itself for judicial review of Board actions of approval or disapproval of barber schools; for when the statute is silent in this regard, in accord with the presumption of constitutionality of legislative enactments, it is presumed that the Legislature did not seek to deprive the aggrieved person of his ordinary right to trial de novo and review of adverse action in the courts, State ex rel. Rathe v. Jefferson Parish School Board, *87 206 La. 317, 19 So.2d 153 at 166, Meyer v. Board of Trustees, 199 La. 633, 6 So.2d 713. As stated in the Meyer case, concerning an administrative agency adjudicating individual rights through a statute which did not specifically provide for judicial review, "The jurisprudence is clear that where a Board has original power to determine matters submitted to it under a statute that, after it has acted, the legal correctness of its action may be attacked in court by a party claiming an adverse legal right (cases cited)", 6 So.2d 717.
But although we hold the statute in itself not unconstitutional, we do feel that by the application of it in the present instance petitioner has been deprived of property without due process of law.
Implicit in all the cases above cited, and explicitly stated in some of them, is this principle:
"The requirements of due process have been held satisfied where resort may be had to the courts to have the action of an administrative officer or body reviewed, except where no stay of the effect of the order appealed is provided, and where, meanwhile, irreparable injury will result," 73 C.J.S., Public Administrative Bodies and Procedure, § 60Due Process of Law in General, p. 386. (Italics ours.)
Or again stated:
"A statute vesting administrative officers with summary powers need not necessarily provide for notice and hearing prior to the exercise of such powers, but if it does not provide for notice and hearing and leaves no remedy whatever against unwarranted action in the exercise of such powers, it is unconstitutional as a denial of due process of law," 42 Am.Jur. 362, Verbo "Public Administrative Law", Section 57 "Summary Powers". (Italics ours.)
See: Porter v. Investors' Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226; Montana Power Co. v. Public Service Commission of Montana, D.C., 12 F.Supp. 946.
If the effects of the Board's order of disapproval can be stayed until the judicial hearing and determination, then a person who feels aggrieved by a Board's summary order cannot complain of a deprival of property without due process of law. But in this instance, although petitioner under an allegation of irreparable injury had the right to seek an immediate restraining order and other judicial injunctive relief, nevertheless the courts could not protect petitioner from irreparable injury: For upon simple order of the Board without hearing, the petitioner's school was effectively closed; the students quit, since (restraining order or not) they could attend petitioner's barber college only at the risk of receiving no credit for time and money spent if judicial review upheld the Board action. The students could not be expected to be so interested in petitioner's welfare as to gamble their time and money on her behalf (although amazingly enough, the record reflects that one student still attends the school).
It is entirely possible that the Board has the power under its rule-making powers[5] to qualify the effect of an order of disapproval to permit students to receive credit for attending a previously approved barber college until judicial hearing and determination (however this results). In any event, the record herein does not reflect such need for urgent action by way of public emergency to justify the summary order effectively putting plaintiff out of business, without opportunity for notice and hearing and judicial review to determine whether the discretion of the Board was abused; and for this reason we hold that the order of the Board herein deprives petitioner of property without due process of law, and should be vacated and set aside.
*88 It should be added that the record herein reflects that the Board was patient and considerate and apparently sincere in its attempt to protect the interests both of the public and of the private parties concerned, without statutory guidance and in the legal vacuum created by the hiatus of the law in this regard. But the same power which may have been used justly in this instance, could be arbitrarily and unjustly used by a less well-intentioned Board to put a citizen out of business before the arbitrary action could be taken to court. Our State and national constitutions have fixed certain mandatory procedural safeguards for the liberty and property of our citizens entitled "due process of law", which our courts are duty-bound to enforce. It is the same principle by which we try undoubted murderers rather than hang them outright; not because the murderers do not deserve immediate hanging, but because otherwise innocent men might be hung just as quickly.
For the above and foregoing reasons, the judgment of the District Court herein is reversed. It is ordered, adjudged, and decreed that there be judgment herein in favor of petitioner, Mrs. Cecile T. Parker, d/b/a Louisiana State Barber College, and against the defendant, the Board of Barber Examiners, State of Louisiana, annullingand ordering said Board to recall, vacate, and set asidethe order of defendant Board of February 16, 1955, disapproving petitioner's school; further (in accordance with petitioner's prayer) ordering the defendant Board to notify in writing all of the students of petitioner's school of this action. This decree is without prejudice to defendant Board to subsequently reinstate disapproval of petitioner's school, providing the requirements of due process of law are satisfied. Defendant-appellee, being a "public board or commission," is dispensed from paying court costs under LSA-R.S. 13:4521, other than court reporter costs in the trial court, which latter are assessed against appellee-Board.
Reversed and rendered.
NOTES
[1] LSA-R.S. 37:357 "Approved schools of barbering

"No school of barbering shall be approved by the board unless:
"(1) It requires, as a prerequisite to admission, graduation from the eighth grade of grammar school or its equivalent thereof in education, as determined by an examination conducted by the board and approved by the Vocational Education Division of the Department of Education;
"(2) It requires, as a prerequisite to graduation, a course of instruction of not less than fifteen hundred hours, completed within nine months, with no more than eight hours to any working day. This course of instruction shall include the following subjects: scientific fundamentals of barbering; hygiene; bacteriology; history of the hair, skin, muscles, and nerves; structure of the head, face, and neck; elementary chemistry as it relates to sterilization and asepsis; diseases of the skin; hair glands; and the massaging and manipulating of the muscles of the body above the seventh cervical vertebra; hair cutting and shaving; and the arranging, dressing, coloring, bleaching, and tinting of the hair;
"(3) It requires, that all instructors shall have been licensed barbers for five years, with certificates of high school education or the equivalent thereof; that all assistant instructors shall have graduated from high school and shall have been licensed barbers for three years; that each instructor and assistant instructor shall have graduated in a course embracing all the theory and scientific manipulation taught in schools approved by the board of barber examiners, and shall have passed an examination, compiled and held by the board of barber examiners to qualify him as an instructor and teacher;
"(4) A sign is placed in front of the barber school, reading: `Barber School Only'."
[2] LSA-R.S. 37:359 provides that the Board shall examine applicants to enter an approved barber school "to determine their educational qualifications". LSA-R.S. 37:373 provides that all barber shops and colleges shall observe certain specified sanitary regulations. LSA-R.S. 37:374, providing that the Board may make "reasonable rules and regulations for the administration and enforcement" of the Act and may prescribe sanitary requirements for barber shops and schools, further provides that each barber shop and school shall post these regulations in a conspicuous place when furnished with a copy by the board. LSA-R.S. 37:375 provides that any barber shop or school may be entered and inspected any time during business hours by a representative of the board. The entire Chapter contains no other reference than these to barber schools.
[3] Cf. Day v. Department of Institutions, 228 La. 105, 81 So.2d 826; Young v. Charity Hospital, 226 La. 708, 77 So.2d 13; Boucher v. Division of Employment Security, 226 La. 227, 75 So.2d 343.
[4] See also Section 37:424 of Part II: "Nothing in this Part abrogates or affects any provisions of * * * Part I of this Chapter."

While by a strained construction, the initial section of Part II, LSA-R.S. 37:411 might be read as: "The board of barber examiners shall act as a control board for the purpose of administering this Part. It shall have any powers necessary for the purpose of administering and enforcing this Part. [In addition,] Generally, it may: (1) Supervise, investigate and regulate the barbering industry of the state." (Italics and words in brackets added by us). Thus, while the italicized portions actually contained in the section seem to limit its application to Part II "Unfair Competition", the word "generally" might imply the general supervisory function in addition to the particular duties.
However, assuming the meaning is unclear and we are therefore entitled to refer to the source statutes to explain the meaning since the Revised Statutes are continuations of the laws revised and consolidated therein, LSA-R.S. 1:16, Perkins v. Brothers of Christian Schools, La.App. 1 Cir., 71 So.2d 400, Note, "Louisiana Revised Statutes of 1950Effect", 15 La.Law Review 472; by examination of the source statute, Section 4, Act 48 of 1936, it seems that the described general powers given to the board are given to it as the instrumentality for the purpose of specifically accomplishing the price-fixing, or "unfair competition and trade practices", provisions of Act 48 of 1936, which are incorporated in the Revised Statutes as Part II. (The basic source statute for Part I is an earlier independent enactment, Act 247 of 1928.)
[5] See LSA-R.S. 37:374, Part I: "The board may make reasonable rules and regulations for the administration and enforcement of the provisions of this Part * * *."