REID, Judge.
Twenty-eight cattle owners from St. Landry Parish instituted these proceedings against the Louisiana Livestock Sanitary Board and Dave Pearce, Commissioner of Agriculture, for several reasons. The first object of the suit was to have the Compulsory Brucellosis Eradication Program enjoined in St. Landry Parish pending the rendition of a final judgment herein. Brucellosis is also known as Bang’s disease in cattle. The Compulsory Brucellosis Eradication Program will hereinafter be referred to as the “compulsory program” for the sake of brevity. The plaintiffs also contend that contractual rights and duties have arisen because of the method by which the program was put into effect in St. Landry Parish and that the contract which was thus made was obtained by fraud and error. The constitutionality of LSA-R.S. 3:2221 et seq. which provide for the compulsory program in the State of Louisiana is also attacked, under provisions of both the Federal Constitution and the State of Louisiana.
An order was signed in connection with the original petition by which the defendants were ruled into court to show cause why a preliminary injunction should not be issued in connection with these proceed *654 ings enjoining the Louisiana Livestock Sanitary Board and Dave Pearce, Commissioner of Agriculture, from proceeding with the Compulsory Brucellosis Eradication Program in St. Landry Parish during the pend-ency of the proceedings.
This order also provided for a rule to show cause why the original petition prepared in order to institute the program should not be produced on or before December 12, 1960.
The attorney for the defendants herein filed pleadings captioned “Exception of No Cause and No Right of Action.” Included in these pleadings was a plea of estoppel. These pleadings were filed on December 12, 1960, as were an answer and reconven-tional demand.
An order was also signed in connection with the answer and reconventional demand. The plaintiffs were ordered to show cause why a preliminary writ of injunction should not issue. If granted, this would have enjoined plaintiffs from interfering with the agents and employees of the defendant while those agents were carrying out the compulsory program in St. Landry Parish.
These rules and exceptions were tried together on December 16, 1960 and January 3, 1961. Testimony was taken on this hearing and affidavits were also filed into evidence. A preliminary injunction was issued in favor of the plaintiffs and against the defendants as prayed for in plaintiffs’ original petition.
By stipulation of counsel, no further evidence was introduced. The record, as thus constituted, was used as the basis for the trial court’s judgment on the merits.
The trial court did not rule on the constitutionality of the statutes in question in either his reasons for issuance of the preliminary injunction, nor in' his judgment on the merits. The same reasons were assigned for the judgment on the trial on the merits as were set forth in the trial -.court’s opinion on the rule, for preliminary injunction. The defendants have perfected an appeal from the judgment of the trial court.
Many issues have been raised by the plaintiffs in this case. These may be grouped into two main categories, these being both contractual issues and constitutional issues in question.
As stated above the trial court did not rule upon the constitutional issues presented herein. The issues will be covered by examining the contractual issues first and then deciding upon the constitutional issues presented.
The trial court decided this case upon these bases. It was found that certain representations were made to the St. Landry Parish cattlemen in an effort to have them sign the necessary petition to inaugurate the compulsory program in their parish. The trial court felt that the most serious representation was that the State and Federal Government did not pay indemnity promised for the cattle which would be slaughtered in every case.
The following excerpts from the Judge’s opinion are pertinent to this point:
“The most serious representation being that the Board promised and advertised when the St. Landry Parish cattlemen were petitioned to come under the act that indemnity would be paid for diseased cattle, but since that time the Legislature has failed to appropriate funds for that purpose, and at the present time nothing is paid by the State though the Federal Government is still paying the amount which it agreed to pay. This circumstance is not the fault of the Board because as testified by Dr. F. B. Wheeler, State Veterinarian, at the time the petition was circulated, funds were available for that purpose and there was no reason to believe otherwise. This is further strengthened by the fact that it was the fact that it was the intention of the Board that the program was to be state-wide, and this could not be seri *655 ously contemplated without the aid of State funds.
“The Board has denied that any misrepresentations were made and offered affidavits to this effect, but the Court is of the opinion that St. Landry Parish cattlemen were promised that they would be paid $37.50 for commercial beef, $50.00 for dairy and $100.00 for registered animals. In the literature circulated by the Board in an effort to sell the program to the cattlemen and under the caption ‘What is the cost to me?’ it is stated: ‘Nothing. Testing and vaccinating will be done at State-Federal expense. Indemnity will be paid for all reactors.” (Emphasis the Court’s.)
“In a newspaper article (no date) concerning the program in St. Landry Parish under the caption ‘Additional Brucellosis Meeting Slated in Area,’ it is stated:
“ ‘If a cattleman puts his animals under the government testing program, .and if they are found to have Brucel-losis, then the farmer can receive the following sums for his animals that are slaughtered:
“ ‘A maximum of $37.50 for commercial beef; $50.00 for dairy and $100.00 for registered animals.’ ”
Again, in another article it is stated:
“If one animal in the herd is infected that animal will be branded, appraised, .and sold for slaughter. The owner will receive one-third of the difference of the appraisal and the slaughter price up to $37.50 for commercial beef, $50.-'00 for dairy, and $100.00 for registered animals. The compensation is paid by the Federal and State governments.” (Emphasis the Court’s.)
“The Court is confident that the promise of indemnity to -cattlemen for tneir diseased animals is a most persuasive and compelling inducement to sign the petition, and while the court is not satisfied that cattlemen are due anything for their diseased cattle, the Legislature had, and this Court will not require St. Landry Parish cattlemen to submit their cattle for test and slaughter in default of such payments by the State.”
The District Judge also found that the Louisiana State Livestock Sanitary Board was given authority to promulgate rules and regulations to carry out its work and to effect the necessary quarantine. It was decided that this was not effectively done in that there was not adequate enforcement of the quarantine. It was found that reinfection of cattle was possible from moving cattle from infected herds within St. Landry Parish to noninfected herds in the said Parish. Also reinfection could occur by movement of infected cattle into or through St. Landi'y Parish from other parishes and states which were not under the compulsory program.
On this point, the Judge did find that signs were placed at entrances to St. Landry Parish warning that infected cattle were not to be transported into the Parish. However, the Court found that there was no evidence that anyone paid attention to these suggestions nor that there were any prosecutions under the criminal section of this statute.
Another representation which the court found was a basis for granting petitioner’s injunction relief was that before the compulsory program was inaugurated, the agents of the defendant stated that the program was to be state wide. Although the hearing in his case was held almost four years after the program was inaugurated in St. Landry Parish, the adjoining Parishes of Avoyelles, Evangeline, St. Martin and Acadia did not yet have the compulsory program.
In summing up the court made the following observations:
“The Court is aware of the need of a brucellosis eradication plan for the *656 State, but that it is of great benefit to cattle owners; but the fact remains that at the present time only three parishes in the whole state have inaugurated area brucellosis eradication work, and Louisiana’s infection rate has dropped from 10.1 per cent on September 30, 1954 to 2.6 per cent on September 30, 1960, all of which indicates that the majority of Louisiana’s cattlemen have been doing something about the program on a voluntary basis. At the present time the national infection rate as represented by the Agriculture Research Service is 0.56 per cent as compared to Louisiana’s infection rate of 2.6 per cent, meaning that more need to be accomplished by Louisiana in this work to keep up with the rest of the states. However, St. Landry Parish cannot accomplish this alone.”
These findings of the trial court have been carefully examined in connection with the record presented on appeal. In due respect, it is stated that incidents of abuse, injustice and misunderstanding have apparently occurred in connection with the institution of and the enforcement of the compulsory program in St. Landry Parish. However, it is felt that these incidents are not of such a nature as to require injunc-tive relief and an order abandoning the entire compulsory program in the parish. A complete review of these incidents is deemed unnecessary, but those which are strongly relied upon by plaintiffs will be covered in this opinion.
The plaintiffs are now bitterly complaining that the indemnity which was to be paid by the State of Louisiana is not now being paid. It is felt that plaintiffs knew or should have known that the indemnity promised was a maximum indemnity. This was apparent from the wording of the pertinent statutes and the publications in evidence. Knowledge of the statutory provision is presumed. In addition it was shown that that indemnity was paid upon the same basis as promised until the legislature failed to appropriate funds to cover the state’s portion of the indemnity. The state appropriation was discretionary with the legislature under the clear terms of the pertinent statutes. All of plaintiffs affected did recover the original amount of indemnity promised when the compulsory program was first instituted. On later tests, they received less without protest. Suffice it to say that plaintiffs have not proven by a preponderance of the evidence that they were induced by fraud or error into inaugurating the compulsory program by promises of fixed indemnities for the cattle slaughtered.
It is also felt that dissatisfied cattle owners may legally attack the methods of administering the compulsory program without setting aside the program in its entirety. The evils arising from the slow progress of inaugurating the compulsory program would only be increased if plaintiffs succeeded in obtaining the relief which they seek. The failure to have the program made statewide in four years is not a fatal defect in the parish compulsory program. Possibly, a more effective quarantine could be established by finding a solution to the problem presented when cattle owners turn their cattle out upon an open range. On these open ranges cattle from adjacent parishes are free to roam and to infect. The defendants rightfully contend that they have neither the personnel nor the funds to make the quarantine effective without the cooperation of the cattle owners in St. Landry Parish. Actually, there is no actual proof in the record that any infection has spread from the adjacent parishes into St. Landry Parish. The plaintiffs have the burden of proof. They have not sustained it.
This same position, i. e., that resort to the courts is available to prevent injustice, is equally tenable as regards plaintiffs’ other attacks upon the method of administering a compulsory program. This includes plaintiff’s contentions that defendants failed to promulgate rules and to give adequate notice as well as other attacks upon the methods used in administering the compulsory program in St. Landry Parish. Parenthetically, *657 it should be noted that it was not proven that defendants had failed to promulgate rules and regulations.
The record shows that the cattlemen were told that each owner must have two clear tests before his herds would be certified Bangs free. Any other impression had by the cattle owners was an unfortunate misunderstanding. It is not found that fraudulent misrepresentations were intentionally employed to mislead the owners. However, common sense should have told the owner that his herd could not be certified Bangs free until it was so, in fact. Any other practical result would be inconceivable.
Plaintiffs attack the constitutionality of the statutes in question upon several grounds. The criminal section of the statutes is attacked as being a violation of the Louisiana rule that all crimes are statutory. Accordingly, it is contended that an owner violating a regulation of the Board could not incur criminal responsibility by such violation. There is no need to determine the validity of this attack at this time for not one of the plaintiffs have shown that he has been affected adversely by this section of the pertinent statutes.
This is also true concerning the attack made upon the provisions of LSA-R.S. 3 :2228. Plaintiffs complain that under that statute if a cattle owner could not be found it would be possible for the Board to post a notice, one hour and proceed to test and slaughter the next. It is felt that this question is not before the court, since this abuse has apparently not occurred. However, it is noted in passing that a reading of this statute in pari materia with LSA-R.S. 3:-2229 shows that the result feared is not possible under the statutes. Ample delays are provided by LSA-R.S. 3:2229 and relate back to the situation regulated by LSA-R.S. 3:2228.
Plaintiffs complain that there is no time limit for the notice required before testing, and that this lack of certainty is a defect in the statutes by which they fail to meet the constitutional test of reasonableness. This test of reasonableness is recognized as essential to the constitutionality of a statute in the case of Ezell v. City Parish Plumbing Board of Baton Rouge, 234 La. 441, 100 So.2d 464, 470. However, it is apparent from a careful reading of the pertinent statutes that ten days notice is required by LSA-R.S. 3 :2229 before agents of the Louisiana State Live Stock Sanitary Board may proceed to test and slaughter, except in cases covered by LSA-R.S. 3:2228. The action required to proceed after complying with LSA-R.S. 3:2228 is also carefully spelled out in LSA-R.S. 3:2229.
Plaintiffs also attack the constitutionality of the pertinent statutes on the grounds that the Board, without publishing any rules or regulations, may proceed to test cattle, deny retests at owner’s own expense, brand cattle for slaughter, and, without any provision for a notice, hearing, or retest, have the cattle slaughtered. Thus the cattlemen are allegedly deprived of property without due process of law.
Cited in support of this contention is the case of Parker v. Board of Barber Examiners, La.App., 84 So.2d 80, 87, from which the following excerpt was quoted by plaintiffs’ counsel, himself:
“Implicit in all the cases above cited, and explicitly stated in some of them, is this principle: ‘The requirements of due process have been held satisfied where resort may be had to the courts to have the action of an administrative officer or body reviewed, except ivhere no stay of the effect of the order appealed is provided and where, memiwhile, irreparable injury will result,’ 73 C.J.S., Public Administrative Bodies and Procedure, § 60 — Due Process of Law in General, P. 386.” (Italics by Court.)
Applying this rule to the case at bar it appears that plaintiffs herein have, in fact, been afforded injunctive relief. Going one step further, it is felt that another quotation from the Parker case is apposite:
*658 (10,11) “But we do not feel that the ‘due process’ requirement is the constitutional strait-jacket claimed by petitioner; that an administrative agency may never issue an order affecting the private right of an individual subject to its regulation without formal notice and hearing before such order. The due process requirement may also be satisfied if a full hearing in the courts is available after the administrative order, with judicial pozver to stay irreparable injury to him affected.
“The Legislature ‘may prescribe a procedure in which the initial order is upon legislative or wholly administrative consideration (without hearing) and the full hearing is afforded in a (subsequent) court action. If the court proceeding includes the full right to present evidence, to meet issues, and to explore the evidence and conclusions of the legislative or administrative agent, due process of law exists. * * * ’ ”
The statutes providing for the compulsory program do not set up administrative boards for the purpose of holding hearings. Therefore, any disagreements concerning the operation of the laws may be taken directly into the courts. This was done in the case at bar. It is difficult to see why plaintiffs complain of this aspect of the statutes involved.
The failure of the Legislature to provide for a hearing before the Board does not affect the constitutionality of the act. Under its police power, the Legislature is authorized to adopt measures affecting the general health and welfare of the public at large. If such an act makes no provision for hearings on complaints, any party aggrieved thereby has access to the courts for relief by way of appeal. Since ample delays for the taking of such appeals are provided in Secs. 2227-2229 of the statute under consideration, there is no violation of the due process clause of either the Constitution of the United States or the State of Louisiana.
Plaintiffs admit that they have had the benefits of a stay pending judicial review of the Board’s actions complained of herein. Plaintiffs’ counsel himself states that “although plaintiffs — appellees herein, under an allegation of irreparable injury, have the right to seek an immediate restraining order and other judicial injunctive relief, nevertheless the courts could not protect petitioner from irreparable injury for the cattle which have been branded and slaughtered.” Thus, plaintiffs’ counsel recognizes that due process has been afforded his clients, but complains that the cattle already branded and slaughtered are taken without those benefits.
The case of State v. Watkins, 176 La. 837, 147 So. 8, is cited in support of plaintiffs’ contention that by enacting LSA-R.S. 3 :2221 et seq., the state legislature has unconstitutionally delegated legislative authority. In that case Act 238 of 1932, which purported to repeal the Prohibition law, was attacked as being unconstitutional on the same basis. The question presented in that case was whether or not the legislature may submit the decision of whether or not a statute is to be repealed to the electors. That case presents an entirely different question from the question presented herein. In this case the legislature merely provided that the statutes which it enacted would include a “local option” provisions. When seventy-five per cent of the cattlemen in a parish petition to inaugurate the compulsory program in their parish, the Board has the right to declare the program in effect in the parish. When enough cattle owners in seventy-five per cent of the parishes have effectively petitioned to inaugurate the compulsory program, then the Board would have the right to declare that all of the state was under the compulsory program.
This type of legislation is a recognized exception from the rule that legislative authority cannot be delegated to the electorate. This exception is recognized in the case of City of Alexandria v. Alexandria Fire Fighters Association, 220 La. 754, 57 *659 So.2d 673, 674. The pertinent language in that.opinion is as follows:
“Another exception to the rule is made as to legislation condition for its operation upon the happening of a certain contingency or future event. 11 Atn.Jur. Sec. 216; 16 C.J.S., Constitutional Law, § 141; Cooley’s Constitutional Limitations, 8th Ed. Vol. 1, pp. 242, 243 and 244. The reason for the allowance of this exception (which is in many cases obviously violative of the cardinal principle) is stated in 11 Am.Jur. Sec. 216 to be ‘that it is not always essential that a legislative act must in any event take effect as law after it leaves the hands of the legislature. If the law is in its provisions a complete statute in other respects, its taking effect may be made conditional upon some subsequent event. When that event happens, the statute takes effect and becomes the law * * * as fully as if the time when it should take effect had been unconditionally fixed.’ ”
The case presented herein is on all fours with the Alexandria case, cited supra, and quoted from in that the statute in that case authorized firemen in cities of population of not less than 15,000 nor more than 250,000 to determine, for themselves, whether the maximum work week in each city should be 72 or 60 hours. The similarity of the statute involved in the Alexandria case to the statutes under attack herein is readily apparent. Therefore, it is found that there has not been an unconstitutional delegation of legislative authority in this case, and ■ the contingent aspects of the statutes are constitutional.
For similar reasons, it is also felt that the statutes involved are not discriminatory in nature. Each cattleman in the affected class in each parish has the same initial right to oppose or promote the institution of the compulsory program in his parish. All cattlemen in the affected class (owners of milk cattle are subject to different statutes and regulations, because of the danger to human health) are subject to the same provisions and contingencies. The category or classification is logical and not arbitrary or unreasonable.
The only apparent limitation is the Board’s ability to inaugurate the program. This is due to limitations in finances and personnel affecting all alike.
For the reasons stated, the Judgment of the District Court is reversed and it is now Ordered, Adjudged and Decreed that there be Judgment in favor of this defendant, recalling, vacating, nullifying and voiding a writ of injunction issued herein and dismissing plaintiffs’ suit at their costs.