ELLIS, Judge.
Plaintiff applied to the Louisiana Board of Barber Examiners, hereinafter referred to as the Board, for a license to permit the establishment of a barber school in Lake Charles, Louisiana. The Board set the matter for hearing, following which it refused to grant the application, citing as the reason the lack of need for such a school. Plaintiff instituted this action in the Nineteenth Judicial District Court in Baton Rouge praying for a writ of mandamus ordering the Board to grant the license.
The issues involved were heard in the District Court on February 25, 1963 and on March 1, 1963 the Trial Court, for written reasons assigned, recalled and vacated the show cause order theretofore issued and rendered judgment in favor of defendant against the plaintiff denying the issuance of a writ of mandamus at plaintiff’s costs. From this judgment plaintiff perfected this appeal.
Plaintiff contends that the Board was not granted discretionary powers with reference to the approval of barber schools and colleges, but rather has a ministerial duty to approve any school meeting the specific requirements set down for such schools in LSA-R.S. 37:357.
The guides provided by the Legislature for the Board to license and regulate schools of barbering are set forth in LSA-R.S. 37:357, “PART I. LICENSING AND REGULATION. Approved schools of barbering,” and are as follows:
“No school of barbering shall be approved by the board unless:
“(1) It requires, as a prerequisite to admission, graduation from the eighth grade of grammar school or its equivalent thereof in education, as determined by an examination conducted by the board and approved by the Vocational Education Division of the Department of Education;
“(2) It requires, as a prerequisite to graduation, a course of instruction of not less than fifteen hundred hours, completed within nine months, with no more than eight hours to any working day. This course of instruction shall include the following subjects * * *;
“(3) It requires, that all instructors shall have been licensed barbers for five years, with certificates of high school education or the equivalent thereof; that all assistant instructors shall have graduated from high school and shall have been licensed barbers for three years; that each instructor and *532 assistant instructor shall have graduated in a course embracing all the theory and scientific manipulation taught in schools approved by the board of barber examiners, and shall have passed an examination, compiled and held by the board of barber examiners, to qualify him as an instructor and teacher;
“(4) A sign is placed in front of the barber school, reading ‘Barber School Only.’ ”
Judge Tate properly concluded in Parker v. Board of Barber Examiners, La.App., 84 So.2d 80 at page 86 that “ * * * the Legislature constitutionally delegated to its (Board of Barber Examiners) the power to determine whether or not barber colleges possessed the specific requirements prescribed by the Legislature as a prerequisite for approval.” Such specific requirements are set forth in Part I, LSA-R.S. 37:357, and are in no wise affected by “PART II. UNFAIR COMPETITION AND TRADE PRACTICES” nor any section contained in Part II and particularly LSA-R.S. 37:411 which specifically grants broad and sweeping power to the Board “necessary for the purpose of administering and enforcing this Part.” (Part II only.) Our position is in accord with this court’s holding in the Parker case, supra, wherein Judge Tate as the organ of the Court specifically stated:
“However, the Board correctly urges that these statutory requirements apply only to investigations authorized under 'this Parf, that is, Part II, ‘Unfair Competition and Trade Practices’ LSA-R.S. 37:411 through 425. This section does not apply to Part I, ‘Licensing and Regulation’, in which is contained provisions relative to approval of barber colleges.[4]
The Board in this instance has acted to deny approval to the plaintiff’s application for a license and approval to establish and operate a barber school, citing as its reason for the denial the Board’s determination of a lack of need for the school. Nowhere in the statute are we able to find any grant of power to refuse Board approval on that basis. The statute does not grant any authority to the Board in making any determination as to the need vel non of any barber school or college. If the applicant satisfies all the requirements of Part I, LSA-R.S. 37:357, he is legally entitled to such a license. There is no discretion vested in the Board where legislative requirements are fully met. There is no dispute nor question but that plaintiff has met *533 all the requirements of the law as set forth in Part I, LSA-R.S. 37:357, and it is therefore the mandatory duty of the Board to issue its approval of plaintiff’s application herein.
Reversed.
HERGET, J., dissents.
Rehearing denied; HERGET, J., dissents from refusal to grant a rehearing.

“4. See also Section 37:424 of Part II: ‘Nothing in this Part abrogates or affects any provisions of * * * Part I of this Chapter.’
“While by a strained construction, the initial section of Part II, LSA-R.S. 37:411 might be read as: ‘The board of barber examiners shall act as a control board for the purpose of administering this Part. It shall have any powers necessary for the purpose of administering and enforcing this Part. (In addition) Generally, it may: (1) Supervise, investigate and regulate the barbering industry of the state.’ (Italics and words in brackets added by us). Thus, while the italicized portions actually contained in the section seem to limit its application to Part II ‘Unfair Competition’, the word ‘generally’ might imply the general supervisory function in addition to the particular duties.
“However, assuming the meaning is unclear and we are therefore entitled to refer to the source statutes to explain the meaning since the Revised Statutes are continuations of the laws revised and consolidated therein, LSA-R.S. 1:16, Perkins v. Brothers of Christian Schools, La.App., 1 Cir., 71 So.2d 400, Note, ‘Louisiana Revised Statutes of 1950 — Effect,’ 15 La.Law Review 472; by examination of the source statute, Section 4, Act 48 of 1936, it seems that the described general powers given to the board are given to it as the instrumentality for the purpose of specifically accomplishing the price-fixing, or ‘unfair competition and trade practices’, provisions of Act 48 of 1936, which are incorporated in the Revised Statutes as Part II. (The basic source statute for Part I is an earlier independent enactment, Act 247 of 1928.).”