# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 11-1184
## consolidated with 11-1185


**"BUDDY" CALDWELL, ATTORNEY GENERAL EX REL.
STATE OF LOUISIANA**

**VERSUS**

**JANSSEN PHARMACEUTICAL, INC., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 04-C-3967-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


**Patrick C. Morrow**
**James P. Ryan**
**Jeffrey M. Bassett**
**Morrow & Morrow**
**Post Office Drawer 1787**
**Opelousas, Louisiana  70571-1787**
**(337) 948-4483**
**Counsel for Plaintiff/Appellee:**
        **James D. "Buddy" Caldwell, Louisiana Attorney General**

**James B. Irwin**
**David W. O'Quinn**
**Kim E. Moore**
**Monique M. Garsaud**
**Douglas J. Moore**
**Irwin, Fritchie, Urquhart & Moore, LLC**
**400 Poydras Street, Suite 2700**
**New Orleans, Louisiana  70130**
**(504) 310-2100**
**Counsel for Defendants/Appellants:**
      **Johnson & Johnson**
      **Ortho-McNeil Janssen Pharmaceutical, Inc.**

**Kenneth W. DeJean**
**Attorney at Law**
**Post Office Box 4325**
**Lafayette, Louisiana  70502**
**(337) 235-5294**
**Counsel for Plaintiff/Appellee:**
      **James D. "Buddy" Caldwell, Louisiana Attorney General**

**Robert Lyle Salim**
**Attorney at Law**
**1901 Texas Street**
**Natchitoches, Louisiana  71457**
**(318) 352-5999**
**Counsel for Plaintiff/Appellee:**
      **James D. "Buddy" Caldwell, Louisiana Attorney General**

**L. Christopher Styron**
**Assistant Attorney General**
**Post Office Box 94005**
**Baton Rouge, Louisiana  70804-9005**
**(225) 326-6468**
**Counsel for Plaintiff/Appellee:**
      **James D. "Buddy" Caldwell, Louisiana Attorney General**

**Michael W. Perrin**
**Fletcher V. Trammel**
**Bailey, Perrin & Bailey**
**440 Louisiana Avenue, Suite 2100**
**Houston, Texas  77002**
**(713) 425-7100**
**Counsel for Plaintiff/Appellee:**
      **James D. "Buddy" Caldwell, Louisiana Attorney General**

**Kenneth T. Fibich**
**Fibich, Hampton, et al**
**1150 Bissonnet**
**Houston, Texas  77005**
**(713) 751-0025**
**Counsel for Plaintiff/Appellee:**
      **James D. "Buddy" Caldwell, Louisiana Attorney General**

**Robert Cowan**
**Attorney at Law**
**440 Louisiana Avenue, Suite 2100**
**Houston, Texas  77002**
**(713) 425-7100**
**Counsel for Plaintiff/Appellee:**
       **James D. "Buddy" Caldwell, Louisiana Attorney General**

**James T. Guglielmo**
**James C. Lopez**
**Guglielmo, Lopez, Tuttle**
**Post Office Drawer 1329**
**Opelousas, Louisiana  70571-1329**
**(337) 948-8201**
**Counsel for Defendants/Appellants:**
       **Johnson & Johnson**
       **Ortho-McNeil Janssen Pharmaceutical, Inc.**

**Thomas F. Campion**
**Drinker, Biddle & Reath, LLP**
**500 Campus Drive**
**Florham Park, New Jersey  07932-1047**
**(973) 360-1100**
**Counsel for Defendants/Appellants:**
       **Johnson & Johnson**
       **Ortho-McNeil Janssen Pharmaceutical, Inc.**

**Brian C. Anderson**
**Michael E. Stamp**
**Stephen D. Brody**
**O'Melveny & Myers, LLP**
**1625 Eye Street, Northwest**
**Washington DC  20006**
**(202) 383-5300**
**Counsel for Defendants/Appellants:**
       **Johnson & Johnson**
       **Ortho-McNeil Janssen Pharmaceutical, Inc.**

**KEATY, Judge.**

The issue in these consolidated cases is whether the Attorney General, acting with authority pursuant to the Louisiana Medical Assistance Programs Integrity Law (MAPIL), La.R.S. 46:437.1 through 46:440.3,[1] and represented by private attorneys, can successfully recover civil penalties from a pharmaceutical company without proving damages. After a multi-day trial, the jury unanimously concluded that the pharmaceutical company's aggressive marketing campaigns had violated MAPIL, resulting in a civil penalty of $257,679,500. The pharmaceutical company was also assessed $70,000,000 in attorney fees and $3,000,200 in costs. From these judgments the pharmaceutical company appeals. Finding that the jury was not manifestly erroneous in determining that the pharmaceutical company had violated Subsection 438.3 of MAPIL, we affirm the trial court's judgment in that regard. Finding that the trial court was not erroneous in its determination of when interest should begin accruing on the penalty award and on the award of attorney fees, we likewise affirm the trial court's judgment on the issue of interest.

## FACTS AND PROCEDURAL HISTORY

The Attorney General of the State of Louisiana initially filed suit against Janssen Pharmaceutica, Inc.[2] (Janssen) on September 16, 2004, in the Twenty-Seventh Judicial District Court on a myriad of legal theories, a recitation of which is not necessary for purposes of this appeal. Ultimately, the only issue presented at trial was whether the defendant, Janssen, violated La.R.S. 46:438.3, a subsection of MAPIL that prohibits persons from presenting, or causing to be presented, false or

---

[1] The 1997 version of MAPIL applies to this matter.

[2] At the time of trial, the defendants were Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Johnson & Johnson, the parent company of Janssen Pharmaceutica, Inc. For purposes of this opinion, defendants will be referred to collectively as "Janssen."

fraudulent claims or misrepresentations to the Louisiana medical assistance program funds.

After six years of litigation, the matter proceeded to trial by jury on September 28, 29, and 30, 2010, and October 12 and 14, 2010. The jury was presented with a plethora of evidence from both parties. At the conclusion of trial, the jury determined that Janssen had violated MAPIL 35,542 times, and that each violation was subject to a civil penalty of $7,250, resulting in a civil monetary penalty of $257,679,500. At an ancillary hearing, the trial court assessed Janssen with $70,000,000 in attorney fees and $3,000,200 in costs. The trial court denied Janssen's request for judgment notwithstanding the verdict (JNOV) and motion for new trial. From these judgments, Janssen appeals.

## ISSUES PRESENTED

Janssen asserts eighteen assignments of error for our review. In answering Janssen's appeal, the Attorney General raises one additional error. The assignments of error presented by Janssen are:

I. The Trial Court Erred As A Matter Of Law When It Entered Judgment Against Appellants Because The Trial Record Is Insufficient To Establish A MAPIL Violation

II. The Trial Court Erred As A Matter Of Law By Allowing The Attorney General To Pursue MAPIL Penalties Based On Alleged FDA Regulatory Violations

III. The Trial Court Erred As A Matter Of Law By Allowing The Attorney General To Pursue MAPIL Penalties Based On Petitioning Activity Protected By The First Amendment To The United States Constitution And Article I, Section 9 Of The Louisiana Constitution

IV. The Judgment Violates The First Amendment To The United States Constitution And Article I, Section 7 Of The Louisiana Constitution By Punishing Constitutionally-Protected Speech

V. The Trial Court Erred By Excluding Scientific Evidence That Supported The Accuracy Of The Scientific Opinions Challenged By The Attorney General

2

VI.   The Trial Court Erred By Excluding Evidence Of Conduct Of The Attorney General And The Louisiana Department Of Health And Hospitals Inconsistent With The Attorney General's Litigation Position

VII.  The Trial Court Erred By Excluding Testimony From Appellants' Statistical Expert

VIII. The Trial Court Erred By Admitting The Informal And Advisory DDMAC Warning Letter[3] And July 21, 2004 Letter Into Evidence

IX.   The Trial Court's Erroneous Evidentiary Rulings Denied Appellants Due Process Of Law

X.    The Trial Court Erred By Allowing The Attorney General's Improper And Inflammatory Closing Argument, Which Appealed To Prejudice Against Out-Of-State Corporations In Violation Of Louisiana Law And The Due Process Clauses Of The United States And Louisiana Constitutions

XI.   The Trial Court Erred By Allowing The Attorney General To Argue To The Jury That Proof Of Actual Damages To Louisiana Medicaid Had Been Shown, When No Such Proof Was Offered At Trial

XII.  The Trial Court Erred By Failing To Instruct The Jury On The Law Applicable To The Attorney General's Claim

XIII. The Trial Court Erred By Instructing The Jury On MAPIL's Legislative Intent And Purpose, The Medical Assistance Programs Fraud Detection Fund, Conspiracy And FDA Regulations

XIV.  The Trial Court Erred By Failing To Instruct The Jury On The First Amendment And The Inapplicability Of FDA Regulations To MAPIL

XV.   The Trial Court Erred By Adopting A Verdict Form That Allowed The Jury To Enter A Verdict Unsupported By Law

XVI.  The Penalty Imposed By The Trial Court's Judgment Violates The 8th And 14th Amendments To The United States Constitution And Louisiana Constitution Article I, Section 2

---

[3] DDMAC is an acronym for the Food and Drug Administration's (FDA) Division of Drug Marketing, Advertising, and Communications. The DDMAC letter referenced throughout the trial and in this brief refers to the initial advisory letter sent to Janssen by the FDA alerting them to the problems with their labeling and/or marketing of Risperdal.

XVII.    The Trial Court Erred By Awarding $70 Million In Attorneys Fees And $3.2 Million In Costs To The Attorney General

XVIII.    The Trial Court Erred When It Denied Appellants' Motion For Judgment Notwithstanding The Verdict Or, In The Alternative, A New Trial.

The assignment of error presented by the Attorney General in its answer to Janssen's appeal is that: "The Trial Court Erred in Refusing to Award Interest From Date of Judicial Demand on both The Judgment Rendered by The Jury and The Award of Attorneys Fees by The Court."

**DISCUSSION**

The resolutions of the myriad of issues in this case are primarily fact driven. We will first address Janssen's assertion that the evidence presented was insufficient to establish a claim under MAPIL. We will then address the errors concerning the trial court's evidentiary rulings, the Attorney General's closing arguments, the jury instructions and jury verdict form, the attorney fees and costs, and the interest awarded. Once we have discussed these assignments of error, we will turn our attention to the appropriateness of the trial court's denial of Janssen's JNOV and motion for new trial. We will then address the assertion that the trial court allowed the Attorney General to pursue MAPIL penalties based on alleged FDA regulatory violations. Finally, we will address Janssen's constitutional grievances. Ultimately, we conclude that the judgments should be affirmed in their entirety.

*Evidence Insufficient to Establish MAPIL*

In its first assignment of error, Janssen asserts that the trial court erred when it entered judgment against them because the trial record is insufficient to establish a MAPIL violation. Specifically, they argue that Subsections A, B, and C of La.R.S. 46:438.3 do not apply to the conduct challenged by the Louisiana Attorney

4

General and that the Attorney General failed to satisfy the threshold requirement of proving or alleging $1,000 in actual damages, pursuant to La.R.S. 46:438.3(F). For the following reasons, we find that this assignment lacks merit.

Determining whether a statute applies to a specific set of facts requires judicial interpretation of the statute. The supreme court discussed statutory interpretation by the judiciary in *Pumphrey v. City of New Orleans*, 05-979 (La. 4/4/06), 925 So.2d 1202, a case in which they determined whether a statute exempted the City of New Orleans from a statutory penalty for non-payment and untimely payment of insurance benefits. In examining the language of the pertinent statute, they stated:

> The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law. *In re Succession of Boyter,* 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. *Id.; Stogner v. Stogner,* 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766. Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the Legislature's intent. La.Rev.Stat. § 1:4 (2004); La. Civ.Code art. 2 (2004); *Lockett v. State, Dept. of Transp. and Development,* 03-1767, p. 3 (La.2/25/04), 869 So.2d 87, 90.
>
> When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. La. Civ.Code art. 9 (2004); *Lockett,* 03-1767 at p. 3, 869 So.2d at 90-91; *Conerly v. State,* 97-0871, p. 3-4 (La.7/8/98), 714 So.2d 709, 710-11. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning. La. Civ.Code arts. 10 and 11 (2004); *Lockett,* 03-1767 at p. 4, 869 So.2d at 91; *Ruiz v. Oniate,* 97-2412, p. 4 (La.5/19/98), 713 So.2d 442, 444. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other. La.Rev.Stat. § 1:3 (2004); La. Civ.Code. arts. 12 and 13; *Lockett,* 03-1767 at p. 4, 869 So.2d at 91.
>
> The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter

and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it. *Boyter,* 99-0761 at p. 9, 756 So.2d at 1129; *Stogner,* 98-3044 at p. 5, 739 So.2d at 766. The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it. *Boyter,* 99-0761 at p. 9, 756 So.2d at 1129. This is because the rules of statutory construction require that the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect. *Id.; Backhus v. Transit Cas. Co.,* 549 So.2d 283, 289 (La.1989). Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. *Boyter,* 99-0761 at p. 9, 756 So.2d at 1129. It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law. *Stogner,* 98-3044 at p. 5, 739 So.2d at 766.

*Id.* at 1209-10. The *Pumphrey* court further explained that "[i]t is a fundamental principle in the construction of statutes that the meaning of a word or phrase may be ascertained by the meaning of other words or phrases with which it is associated." *Id.* at 1211. "[T]he general words are not to be construed in their widest extent, but are to be held as applying only to such classes of things of the same general kind as those specifically mentioned." *Id*. Finally, the *Pumphrey* court stated:

> Moreover, the law shall be applied as written, and therefore, a court must give effect to the literal application of the language of a statute, including its grammatical construction, except in the rare case where such application will produce absurd or unreasonable results. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); La. Civ.Code art. 9. In such manner, punctuation as well as grammatical construction in general, although never relied upon to defeat the obvious intent, may operate as an aid in the construction and interpretation of the statute. *Joy v. City of St. Louis,* 138 U.S. 1, 32, 11 S.Ct. 243, 251, 34 L.Ed. 843 (1891).

*Id*. at 1211-12.

> The manifest error standard of review applies to all factual findings, including a finding relating to the factual sufficiency of evidence to warrant application of a legal theory or doctrine. This standard of review also applies to mixed questions of law and fact, such as the issue of whether the facts found by the trier of fact trigger application of a particular legal standard.

6

*Williams v. Dutchtown Pharmacy, L.L.C.*, 08-2559, pp. 4-5 (La.App. 1 Cir. 9/11/09), 24 So.3d 221, 224 (citation omitted). Fundamental to an appellate court's review of trial court judgments is the well-settled principle that an appellate court cannot set aside a fact finder's finding of fact in the absence of manifest error or unless it is clearly wrong. *Johnson v. Morehouse Gen. Hosp.*, 10-387, 10-488 (La. 5/10/11), 63 So.3d 87.

> In reviewing a factfinder's factual conclusions, an appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Kaiser v. Hardin,* 06-2092 (La.4/11/07), 953 So.2d 802, 810; *Guillory v. Insurance Co. of North America,* 96-1084 (La.4/8/97), 692 So.2d 1029, 1031. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Arceneaux v. Domingue,* 365 So.2d 1330, 1333 (La.1978).

*Id*. at 96.

Janssen claims that the trial court disregarded MAPIL's provisions and turned it into a sweeping consumer protection statute. The Attorney General argues that MAPIL is a much broader statute than Janssen asserts, and the trial court was correct in its interpretation of MAPIL's applicability to the instant case. We must now determine whether the trial court's determination that Janssen could be held liable for its conduct pursuant to MAPIL was reasonable. The relevant provisions for purposes of this appeal are Subsections A, B, and C of La.R.S. 46:438.3, which stated:

> A.    No person shall knowingly present or cause to be presented a false or fraudulent claim.
>
> B.    No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance programs funds.
>
> C.    No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by

obtaining, or attempting to obtain, payment for a false or fraudulent claim.

This issue was raised in Defendant's motion for summary judgment, which was decided by the trial court on January 7, 2010 and rendered on January 25, 2010. The trial court explained in its written reasons for ruling that it was denying Janssen's motion for summary judgment on the Attorney General's MAPIL claim based on the decision in "*State of West Virginia ex rel. Darrell V. McGraw, Jr., Attorney General v. Johnson & Johnson et al.,* Civil Action No. 04-C-156, Circuit Court of Brook County, West Virginia," in which that court stated: "'[F]or the purposes of determining an appropriate civil penalty, [that] Court conclude[d] as a matter of law that whenever false or misleading promotional materials that concern health [are] delivered to the public, or its healthcare providers, that such promotional materials in and of [themselves] cause harm and injury.'"

The trial court went on to state:

> In accordance with the *McGraw* decision, this Court finds that the analysis set forth in *Hood* is inapplicable to the plaintiff's MAPIL claim, as proof of delivery to the public or to healthcare providers of false or misleading promotional materials concerning Risperdal may be used by the plaintiff in an attempt to establish a MAPIL claim. This Court further finds that genuine issues of material fact exist, which preclude the entry of summary judgment on the plaintiff's MAPIL claim at this time.

The issue was raised a second time before the trial court immediately preceding trial, and at that time, the trial court stated that it thought "their theory . . . is to attempt to show that none of those prescriptions, or many of them, should not or may not have been written because the doctors weren't given full information. That's their theory. I don't know whether it's right or not." It went on to explain part of its interpretation of MAPIL as:

> [M]y lean at this time is under 438.3(A), I think the ["]no person shall knowingly present or cause to be presented["] is not a legal causation requirement. I just don't accept that. The B part about ["]engage in

8

misrepresentation to obtain["] – I kind of like the comma and disjunctive "or". . . . On the C portion, 438.3(C), no person shall conspire to defraud, comma, "or". If they wanted to do something different, they could have put and slant or. But they didn't. Or they could have put "and". But you've got a comma which depends on a comma. Funny how that works. And then the disjunctive "or", o-r. . . . it prohibits conspiracy to defraud or any attempt – attempt to defraud. Do I think the statute is broadly written? I do. And I only get that because it kind of says that in 437.2. Under Legislative intent, and it appears that from what I – the way I read the B portion at least, is that they want the secretary, private citizens and the Attorney General to all be able to attempt to protect in whatever fashion the programmatic integrity, the fiscal and programmatic integrity, of the medical assistance programs.

In further explaining why it believed the Attorney General could seek civil penalties under MAPIL, the trial court stated:

> [W]hat I attempted to say and perhaps unartfully in those reasons [for ruling on Janssen's motion for summary judgment, which is excerpted above], was . . . that if it is shown that the statements were misleading, fraudulent, whatever the definition stuff is that they're alleging, that in and of itself provides their causation.
>
> . . . .
>
> I find that if they prove false, misleading, misrepresentative, deceitful, intent to defraud type statements, attempts to defraud type statements, that in and of itself is the causation they need to get to their penalty statute.

After carefully reviewing the record, we find that the trial court did not abuse its discretion in interpreting the MAPIL statute to mean that if the Attorney General was able to prove "false, misleading, misrepresentative, deceitful, intent to defraud type statements, attempts to defraud type statements" Janssen would be liable for civil penalties under MAPIL. The trial court paid attention to the language and punctuation of the statute and read the pertinent subsections *in pari materi* with the remainder of the MAPIL legislation, as required by the *Pumphrey* court. Its interpretation of the statute is a reasonable one. Accordingly, this assignment lacks merit.

*Evidence*

Whether the trial court made evidentiary rulings that unfairly prejudiced the corporation is the subject of Janssen's fifth through ninth assignments of error. Specifically, the corporation alleges that the trial court erred by: excluding evidence that supported the accuracy of the scientific opinions they stated; excluding evidence that proved the Attorney General and Department of Health and Hospitals' conduct was inconsistent with the Attorney General's litigation position; excluding testimony from Janssen's statistician expert showing that Janssen did not misrepresent Risperdal's safety and that Louisiana doctors were not misled by the "dear doctor" letters; admitting the informal and advisory DDMAC warning letter into evidence; and finally, that these alleged evidentiary errors denied Janssen due process.

In general, an error on appeal "may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." La.Code Evid. art. 103(A). In addition, "[w]hen the ruling is one excluding evidence, the substance of the evidence [must have been] made known to the court by counsel." La.Code Evid. art. 103(A)(2). On the other hand, "[w]hen the ruling is one admitting evidence," counsel must have made for the record "a timely objection or motion to admonish the jury to limit or disregard" the evidence, "stating the specific ground of objection." La.Code Evid. art. 103(A)(1). "The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of that discretion." *Hays v. Christus Schumpert N. La.*, 46,408, p. 7 (La.App. 2 Cir. 9/21/11), 72 So.3d 955, 961.

Appellate courts must employ a two-part test to determine whether the trial court's evidentiary ruling was erroneous: first, we must determine "whether the complained of ruling was erroneous and [then,] whether the error affected a

substantial right of the party." *Id.* "The concept of 'substantial right' as used in Article 103 is 'a kin to the familiar 'harmless error' doctrine applicable in both civil and criminal matters.'" *Arceneaux v. Amstar Corp.*, 06-1592, p. 37 (La.App. 4 Cir. 10/31/07), 969 So.2d 755, 779, *writs denied*, 07-2486 (La. 3/24/08), 977 So.2d 952, and 08-53 (La. 3/24/08), 977 So.2d 953 (citation omitted). It is the complaining party's burden to present evidence of how an alleged error had a substantial bearing or effect on the outcome of the case. *See McKenzie v. Thomas*, 95-2226 (La.App. 1 Cir. 6/28/96), 678 So.2d 42, *writ denied*, 96-1855 (La. 10/25/96), 681 So.2d 372.

### *Excluding Evidence*

Janssen complains that the trial court erroneously excluded evidence that supported the accuracy of the scientific opinions they stated and that proved the Attorney General and Department of Health and Hospitals' conduct was inconsistent with the Attorney General's litigation position. It further asserts that the trial court erroneously excluded testimony from its expert statistician, which would have shown that Janssen did not misrepresent Risperdal's safety and that Louisiana doctors were not misled by the "dear doctor" letters.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403.

In excluding evidence that allegedly supported the accuracy of the scientific opinions stated by Janssen, and evidence that allegedly proved the Attorney General and Department of Health and Hospitals' conduct was inconsistent with the Attorney General's litigation position, the trial court stated:

11

[T]his case is about, as far as I know, nobody has told me different, events which occurred from November of 2003 to July of 2004. Anything that you do from this point forward that I believe is deliberate to get outside of those confines, I'm going to tell you, I am going to call you on it.

. . . .

. . . What I stated at the time was that that was going to be the relevant time period and everything I considered was going to be with regard to that relevant time period. I went on to say if something occurred either before or after and it was directly relevant to what occurred in those years, then that's what I would consider relevant. That was my ruling; it still is. I have not had the opportunity to determine whether the testimony of the DHHR officials would result in a statement against interest. Mr. Irwin tells me, and I accept in good faith, that the depositions as I read them will indicate only to this extent that they had knowledge. They were sent, or a copy was forwarded, to the State Director of the Department of Health and Hospitals as to the warning letter or the correction letter. To that extent, those officials can be asked and I will allow that. Did you get a letter, the warning letter, did you get a copy of the correction letter and what action, if any, did you take in that regard. That is what I am going to allow in that regard. As to the particular motion, the testimony with regard to whether the Attorney General's Office informed anyone or not, I'll take those questions as they come and make a decision accordingly. Testimony that DHH has repeatedly placed Risperdal on the preferred drug list, I'm going to tell you right now, I'm not going to allow that. The letter from FDA officials closing the informal regulatory matter, plaintiff has brought out without requiring any civil penalties or taking any formal enforcement action, I'm going to allow that because it's, to me, relevant in place and time with the events that occurred in 2003 and 4 which is the subject of this litigation. I will allow that. The subsequent scientific developments I'm not going to allow. I'm not going to allow it because I believe that the pertinent time period we're dealing with is from November 10, 2003, July 21, 2004 and the scientific evidence considered by the FDA and Janssen in their communications and their actions, both sides, both parties are, FDA and Janssen. As to the 2009 Zyprexa label change, I'm going to disallow it because it's an indirect method of showing a subsequent action and I'm not going to allow it. With that, that's going to be my ruling. As to each question asked, I will consider it in that context to any witness at any time. Now that's my ruling.

After carefully reviewing the record, we find no abuse of discretion by the trial court. Accordingly, these assignments lack merit.

Janssen contends that the trial court erred in excluding the testimony of its expert statistician. Louisiana Code of Evidence Article 702 governs expert testimony, which must be relevant and the probative value must outweigh the prejudice. *Clay v. Int'l Harvester*, 95-1572 (La.App. 3 Cir. 5/8/96), 674 So.2d 398.

> In *Frederick v. Woman's Hosp. of Acadiana,* 626 So.2d 467 (La.App. 3 Cir.1993), *writ denied,* 93-2991 (La.2/4/94), 633 So.2d 169, this court approved of the Fourth Circuit Court of Appeal's approach to the evaluation of the admissibility of expert testimony, pronounced in *Adams v. Chevron, U.S.A., Inc.,* 589 So.2d 1219 (La.App. 4 Cir.1991), *writs denied,* 592 So.2d 414, 415 (La.1992). In *Adams,* the fourth circuit adopted the *Christophersen v. Allied-Signal Corp.,* 939 F.2d 1106 (5th Cir.1991) interpretation of Federal Rule of Evidence article 403 for the evaluation of the admissibility of expert testimony under Louisiana law. That four-inquiry approach is as follows:
>
>> (1) whether the witness is qualified to express an expert opinion, (2) whether the facts upon which the expert relies are the same type as are relied upon by other experts in the field, (3) whether in reaching his conclusion the expert used well-founded methodology, and (4) assuming the expert's testimony passes these tests, whether the testimony's potential for unfair prejudice substantially outweighs its probative value under the relevant rules.
>
> *Adams,* 589 So.2d at 1223. In *Frederick,* 626 So.2d 467, this court broadened the fourth inquiry to include consideration of the cumulative nature of the expert testimony, since Article 403 provides a balance of probative value not only against unfair prejudice but also against undue delay or waste of time considerations.
>
> The *Frederick* court reasoned that, in cases where the first three *Adams* inquiries are positively answered, the following criteria applies to the determination of the fourth inquiry:
>
>> Admitting cumulative expert testimony not excludable on other grounds requires its fulfilling three conditions. The first condition questions the relevance of the testimony to be elicited. The second seeks to ascertain that the fact finder will be aided by the testimony. The third, balancing the probative value of this testimony against substantial prejudice, confusion, or inefficiency, guards against undue removal of reason from the fact finding process, as well as waste.

*Clay*, 674 So.2d at 403. A failure to meet any of these three criteria means the fourth prong has failed and it is fatal to the admission of "an expert's unbridled testimony." *Id.* Evidence should also be excluded "if its probative value is outweighed by the risk that its admission will consume too much time [or] unnecessarily confuse the jury concerning the issues to be determined." *State v. Jackson*, 584 So.2d 266, 269 (La.App. 1 Cir. 1991), *writ denied*, 585 So.2d 577.

In its reasons for excluding testimony from Janssen's statistician expert, the trial court stated:

> The question is what opinion is he going to give to me with regard to the facts that are relevant to this case.
>
> . . . .
>
> I understand it's what statisticians do. That's not the issue before me. I understand the validity of statisticals. Regardless, they are accurate. I was amazed at how an algorithm can be created to perform a statistical operation which will pretty much tell you the answer to almost any human question that comes up. That's not the question. The question is does it meet the exception as to hearsay created by Article 703 of the Code of Evidence is, but evidently there is such a field. In this particular instance, this Court finds that what we've got is a gentleman who is unparalleled in the field of statistics. There's no doubt in my mind. But he is not going to render any opinion that has any relevance to this case with reference to his expertise. He is going to give us by what I'm understanding, his understanding, his expert understanding, on what one hundred and fifty physicians' opinions were. So all he is, is he's taking their opinions and saying this is what they said and I take issue with you saying, well, there's no other way it could have been presented. I recall going up earlier where we were discussing whether Louisiana's privacy laws were beyond HIPAA. And I said, well, you know what, I'm going to let it go because they can't have six thousand contradictory hearings and my Court of Appeal sent me back with a slap on the hand and said, you can't do that. Six thousand? You may have to have one. Right now our law doesn't allow anything else. Based on all of that, and primarily based upon the fact that I find the gentleman is not going to be giving us an opinion of the type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data with regard to this case. Not his opinion. He is merely acting as a conduit to tell me what others' opinions are. As a result, I'm going to deny his testimony and I'll give you the opportunity then to refocus your case.

After carefully reviewing the record, we find no manifest error in the trial court's ruling. The trial court considered the factors presented in *Frederick*, 626 So.2d 467, and determined that the testimony the expert would provide was not relevant to the case before the jury. Accordingly this assignment lacks merit.

### *Admitting Evidence*

Janssen complains that the trial court erroneously admitted into evidence the informal and advisory DDMAC Warning Letter as well as Janssen's response letter dated July 21, 2004. The DDMAC Warning Letter sent to Janssen alleges that communications made to healthcare providers on November 10, 2003, violated two sections of the Federal Food, Drug, and Cosmetic Act. After receipt of the DDMAC letter, Janssen responded by agreeing to send a follow-up letter to healthcare providers, dated July 21, 2004, addressing DDMAC's allegations and providing information for which the DDMAC section of the FDA had complained. The trial court admitted the DDMAC letter under the public records exception to the hearsay rule set forth in La.Code Evid. art. 803(8). In addition, the trial court noted that the letter represented only one among many pieces of evidence submitted by the Attorney General in support of his claim.

> La. C.E. art. 803(8) provides that records, reports, statements, or data compilations, in any form, of a public office or agency setting forth its regularly conducted and regularly recorded activities are exceptions to the hearsay rule. The public document exception to the hearsay rule is based on the principles of necessity and the probability of trustworthiness.

*State v. Caston*, 43,565, p. 18 (La.App. 2 Cir. 9/24/08), 996 So.2d 480, 490.

"Evidentiary admissibility rulings are well within the discretion of the trial court." *Wingfield v. State ex rel. Dep't of Transp. and Dev.*, 01-2668, p. 21 (La.App. 1 Cir. 11/8/02), 835 So.2d 785, 803, *writs denied*, 03-313, 03-339, 03-349 (La. 5/30/03), 845 So.2d 1059, 1060, *cert. denied*, 540 U.S. 950, 124 S.Ct. 419

15

(2003). Additionally, "[t]he relevancy of evidence and the effect of prejudice from the offered evidence are governed by the Louisiana Code Evidence articles 401-403." *Id.* at 803-04.

After carefully reviewing the record in light of the law and jurisprudence, we find that the trial court did not abuse its discretion in admitting the DDMAC letter under the public records exception to the hearsay rule. Accordingly, this assignment lacks merit.

### *Evidentiary Due Process Violations*

Janssen asserts that the trial court's alleged erroneous evidentiary rulings deprived the corporation of due process.

> The Fourteenth Amendment to the United States Constitution provides, in pertinent part, "nor shall any state deprive any person of life, liberty or property, without due process of law." In addition, LA CONST. ANN. art 1 § 2 provides "[n]o person shall be deprived of life, liberty, or property, except by due process of law."
>
> . . . .
>
> Due process is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. As a generalization, it can be said due process embodies the differing rules of fair play which through the years have become associated with differing types of proceedings.

*Driscoll v. Stucker*, 04-589, pp. 9-13 (La. 1/19/05), 893 So.2d 32, 41-43 (citations omitted).

> The "due process of law" provision in the Constitution is designed to exclude oppression and arbitrary power from every branch of the government. "'Due process of law,' in judicial proceedings, means a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the conduct and enforcement of private rights." It means that no person shall be deprived of life, liberty, property, or of any right granted him by statute, unless the matter involved shall first have been adjudicated against him upon trial conducted according to established rules regulating judicial proceedings. It forbids condemnation without a hearing.

16

> It has been said by many courts that "due process of law" and the "law of the land" mean the same thing. Daniel Webster . . . gave a definition of "law of the land" and "due process of law" which has received the sanction of the courts. He said: "By the 'law of the land' is clearly intended the general law, which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial."

*Dupuy v. Tedora*, 15 So.2d 886, 890-91 (La.1943) (citations omitted).

> Due process affords a defendant the right of full confrontation and cross-examination of the witnesses testifying against him. The trial court has discretion to control the extent of the examination of witnesses as long as it does not deprive the defendant of his right to effective cross-examination. Evidentiary rules may not supersede the fundamental right to present a defense.

*Reuther v. Smith*, 05-794, p. 7 (La.App. 4 Cir. 2/15/06), 926 So.2d 9, 13 (citations omitted). However, "'[d]ue process of law' only means due notices and opportunity to be heard." *Bass v. Yazoo*, 67 So. 355, 355 (La.1915).

In the instant case, the record clearly indicates that Janssen was afforded notice and an opportunity to be heard. Before each of the evidentiary rulings Janssen presents as error the trial court heard argument from both parties. The trial court is afforded vast discretion in making evidentiary rulings. We have found no abuse of that discretion and, after carefully reviewing the record, are certain that Janssen was given notice and afforded the opportunity to be heard. Accordingly, this assignment lacks merit.

### Closing Arguments

Whether the trial court erred in allowing the Attorney General to make prejudicial or improper closing arguments that appealed to prejudices against out of state corporations in violation of Louisiana law and the Constitutions of the United States and the State of Louisiana is the subject of Janssen's tenth assignment of error.

"[C]ounsel have great latitude in argument before a jury, subject however to regulation and control by the court whose duty it is to confine argument within

proper bounds." *Luquette v. Bouillion*, 184 So.2d 766, 771 (La.App. 3 Cir. 1966). "The parties to an action are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice, and counsel should confine his argument to the evidence of the case and to the inferences properly to be drawn therefrom. . . ." *Temple v. Liberty Mut. Ins. Co.*, 316 So.2d 783, 793 (La.App. 1 Cir. 1975), *reversed on other grounds*, 330 So.2d 891 (La.1976) (citation omitted). "[T]he propriety or not of a particular argument made at a particular time must be determined in the light of the facts of the particular case, the conduct and atmosphere of that particular trial, and the arguments of opposing counsel." *Luquette*, 184 So.2d at 771. "[A]ppeals to sympathy, as long as they are based on the facts in the case, are not ordinarily considered improper and furnish no ground for complaint." *Caballero v. Catholic Mut. Ins. Co.*, 97-1458, p. 3 (La.App. 1 Cir.), 718 So.2d 511, 514, *writ denied*, 98-2498 (La. 11/25/98), 729 So.2d 567. If all of the evidence referenced by counsel in their argument has been properly admitted into the record, references thereto cannot be prejudicial. *LeRay v. St. Paul Fire & Marine Ins. Co.*, 444 So.2d 1252 (La.App. 1 Cir. 1983), *writ granted*, 448 So.2d 108 (La.) and *writ dismissed*, 452 So.2d 1174 (La.1984). "Some flights of eloquence, and the introduction of some touches of pathos in the discussion of the case, are considered to be within the general constraints of permissible argument." *Caballero*, 718 So.2d at 514. "[F]air advocacy not designed to inflame the jury is permissible." *Ogletree v. Willis-Knighton Mem. Hosp., Inc.*, 530 So.2d 1175, 1181 (La.App. 2 Cir.), *writ denied*, 532 So.2d 133 (La.1988).

However, "[i]nflamatory remarks made by counsel in argument which are calculated to appeal to the passions and prejudices of a jury are improper." *Temple*, 316 So.2d at 793 (citation omitted). Presenting "considerations extraneous to the [admitted] evidence" or appealing to jury "sympathy based on

18

matters not in evidence and which cannot in any legitimate way be brought to the attention of the jury" constitute highly improper arguments. *Id.* (Citations omitted.) "The test of whether argument of counsel is prejudicial or inflammatory is whether such comment is unreasonable or unfair in the eyes of the law." *Id.* (Citation omitted.)

The propriety of the Attorney General's closing argument was brought to the trial court's attention immediately following the argument. At that time, the trial court found:

> [T]hat the general tenor of the argument was to the effect that the parties to be considered here and to be punished, if anyone, were Janssen and Johnson and Johnson, who were part of corporate America. But he hastened to add on both occasions, because I was listening for it, that corporate America in the form of, in this courtroom, Janssen and Janssen – Janssen and Johnson and Johnson. As a result, I overrule your objection. I decline to give the jury instruction that you seek and I note your objection to my ruling for the record.
>
> . . . .
>
> . . . I'm going to note for the record that I believe the Motion for Mistrial at this point borders on the audacious. And I deny it in that spirit. Every lawyer I've ever heard do a closing argument can tell the jury what he thinks the facts show when compared to the law and I find that that's completely consistent with what a closing argument should be.

"[R]ulings of a trial court relative to alleged improper argument are presumed to have been within the court's discretion in such matters." *Temple*, 316 So.2d at 793 (citing *Luquette*, 184 So.2d 766). The standard of review is abuse of discretion, because "[t]he trial court is in a better position than an appellate court to determine possible prejudicial effects resulting from counsel's argument before a jury." *Caballero*, 718 So.2d at 514.

"[B]efore a reviewing court can hold that an improper argument constitutes reversible error, the court 'must be thoroughly convinced the remark influenced the

19

jury and contributed to its verdict.'" *Simon v. State Farm Mut. Auto. Ins. Co.*, 09-1083, p. 8 (La.App. 3 Cir. 6/9/10), 43 So.3d 990, 998, *writ denied*, 10-1613 (La. 10/29/10), 48 So.3d 1094 (citation omitted). The record reflects that when instructing the jury, the trial court stated:

> The evidence which you are to consider consists of the stipulated facts, the testimony of the witnesses, the documents that have been admitted into evidence, and any fair inferences and reasonable conclusions which you can draw from the evidence submitted to you. Neither the written pleadings nor arguments by the lawyers, nor any comment or ruling which I have made is evidence.

Even if we were to that find the Attorney General made improper statements during closing argument, the trial court remedied this by instructing the jury to disregard all written pleadings, arguments by attorneys, and comments or rulings from the bench when deliberating. *See Karagiannopoulos v. State Farm Fire & Cas. Co.*, 94-1048 (La.App. 5 Cir. 11/10/99), 752 So.2d 202, *writ denied*, 99-2866 (La. 12/10/99), 752 So.2d 165 (finding that the trial court's instruction to the jury on the non-evidentiary nature of arguments by attorneys remedied any potentially improper remarks made by an attorney during closing argument). We find the trial court's instruction to the jury that arguments by counsel have no evidentiary value to be sufficient to preclude any potentially improper statements from influencing the jury or contributing to its verdict. We further find that the trial court did not abuse its discretion in overruling Janssen's objection to the Attorney General's closing arguments or in denying Janssen's motion for mistrial based on the Attorney General's closing arguments. Accordingly, this assignment lacks merit.

*Jury Instructions/Form*

Janssen asserts that the trial court erred: by allowing the Attorney General to argue to the jury that proof of actual damages to Louisiana Medicaid had been shown; by failing to instruct the jury on the law applicable to the Attorney

20

General's claim; by instructing the jury on MAPIL's legislative intent and purpose, the Medical Assistance Programs Fraud Detection Fund, conspiracy, and FDA regulations; by failing to instruct the jury on the First Amendment and the inapplicability of FDA regulations to MAPIL; and by adopting a verdict form that allowed the jury to enter a verdict unsupported by law.

We review jury instructions and jury verdict forms for manifest error. *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586 (La. 4/1/11), 61 So.3d 507 and *Townes v. Liberty Mut. Ins. Co.*, 09-2110 (La.App. 1 Cir. 5/7/10), 41 So.3d 520. Louisiana Code of Civil Procedure Article 1792 governs jury instructions and provides that the trial court "shall instruct the jurors on the law applicable to the cause submitted to them." Jury interrogatories must "fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict." *Townes*, 41 So.3d at 527. Louisiana jurisprudence is clear that a trial court is under no obligation to give any particular jury instruction and has the right to determine what law is applicable and appropriate. *Wooley*, 61 So.3d 507. The trial court may include any instruction that will reduce confusion among jurors. *Id.* In reviewing jury instructions, the "ultimate inquiry on appeal is whether the jury instructions misled the jury to such an extent that the jurors were prevented from dispensing justice." *Wooley*, 61 So.3d at 574. Similarly, we may not set aside a jury verdict form "unless the form is 'so inadequate that the jury is precluded from reaching a verdict based upon correct law and facts.'" *Ford v. Beam Radiator, Inc.*, 96-2787, p. 3 (La.App. 1 Cir. 2/20/98), 708 So.2d 1158, 1160 (citation omitted).

After carefully reviewing the record we find no manifest error with the trial court's jury instructions nor with the jury verdict form. Therefore, this assignment lacks merit.

***Attorney Fees and Costs***

Whether the trial court erred by awarding $70,000,000 in attorney fees and $3,000,200 in costs to the Attorney General is the subject of Janssen's seventeenth assignment of error. Specifically, Janssen argues that these monetary penalties are unconstitutional; that "the trial court failed to account for the fact that most of the work done for more than five of the six years between the filing of this action and trial related to Medicaid reimbursement and off-label marketing claims, on which Appellants were granted partial summary judgment and which were then abandoned by the Attorney General before trial;" that the time records submitted do not reflect work actually performed by counsel; and that the trial court erred in determining that the Attorney General's private counsel "undertook a risk that its fees, which were contingent on success, would never be paid."

### *Attorney Fees*

"Whether an attorney fee is clearly excessive is a finding of fact to be made by the trial judge which will not be disturbed on appeal absent manifest error." *Teche Bank and Trust Co. v. Willis*, 93-732, p. [] (La.App. 3 Cir. 2/2/94), 631 So.2d 644, 647. "In determining and fixing the attorney's fees, the court must adhere to the Rules of Professional Conduct which prohibit an attorney from collecting a fee that is in excess of a reasonable fee. . . ." *Graves v. Lou Ana Foods Inc.*, 604 So.2d 150, 168 (La.App. 3 Cir. 1992). "[T]he determination of fairness and reasonableness of an attorney fee is ultimately a question for the courts." *Ruttley v. Steiner*, 95-73, p. 16 (La.App. 5 Cir. 5/30/95), 656 So.2d 1095, 1102. "The fundamental measure of attorney's fees is reasonableness. . . ." *Mayeur v. Campbell*, 94-2263, p. 7 (La.App. 1 Cir. 12/12/95), 666 So.2d 366, 370. "A fee is 'clearly excessive,' if it is 'so grossly out of proportion with fees charged for similar services by other attorneys in the locale as to constitute an unquestionable

abuse of an attorney's professional responsibility to the public.'" *Teche*, 631 So.2d at 646-47 (citation omitted.)

Attorney fees under MAPIL are authorized under La.R.S. 46:438.6(D)(1) and (2), which provides:

> (1) Any person who is found to have violated this Subpart shall be liable for all costs, expenses, and fees related to investigations and proceedings associated with the violation, including attorney fees.
>
> (2) All awards of costs, expenses, fees, and attorney fees are subject to review by the court using a reasonable, necessary, and proper standard of review.

"Attorney's fee statutes must be construed strictly because the award of attorney fees is exceptional and penal in nature." *Cracco v. Barras*, 520 So.2d 371, 372 (La.1988). In determining the reasonableness of an attorney fee, the trial court may take into consideration the ultimate result obtained; the responsibility incurred; the importance of the litigation; the amount of money involved; the extent and character of the work performed; the legal knowledge, attainment, and skill of the attorneys involved; the number of appearances made; the intricacies of the facts involved; the diligence and skill of counsel; and the court's own knowledge. *State*, *Dep't of Transp. and Dev. v. Williamson*, 597 So.2d 439 (La.1992).

The trial court's oral reasons for ruling on attorney fees and costs filled forty-one pages of the transcript. A careful review of the record indicates that the trial court considered each and every factor enumerated in *Williamson* in great detail, in addition to considering expert testimony from both parties on proposed fee determinations. In arriving at the attorney fee and costs award, the trial court considered the level of competence of the lawyers; the complexity of the litigation, which included "twenty-nine status conferences, thirty-one major motions," and "two hundred and twenty four depositions taken"; Justice Powell's holding in

*Hensley*; the result the plaintiffs obtained; the interrelatedness of the causes of action originally presented; the court experts involved in the litigation; the *Williamson* and *Corbello* cases; the novelty of the case; the difficulty of the questions involved; the time spent on the litigation; the non-contemporaneous time sheets; the factors of [Model Rules of Professional Conduct Rule] 1.5 (A); the responsibility incurred; the importance of the litigation; and the amount of money involved. Specifically, the trial court stated:

> I'm telling you about the complexity of the litigation for a reason. We looked rather intricately at everything. . . . All of that is unique, forced me to look at the causes of action whether they were related, what the underlying basis of it all was . . . . I'm going to deal with the easiest portion of that factor, "novelty". If I have not made it clear yet, this case was novel. This case was unique in the way it was presented, in the way it was moved along. Finally, into the courtroom, into the requirements made of counsel, into the requirements of the Court to try and maintain an understanding of what was occurring. I'm going to tell you, novel, if this case qualifies as nothing else, it is novel. . . . [W]e as a group, the lawyers had to learn, understand and then teach me about the Federal Drug Act, the regulations that go with that, whether they apply, can they be used as a ceiling or a floor, was there preemption. . . . I can't imagine something more difficult. . . . These folks are professional, courteous, zealous, and vigorous. They're ethical. No matter what happened, no matter how angry I know they had to have been at times with my rulings, my pontifications, whatever it was, I never saw it from either side. That's to me the hallmark of good lawyering. The task to me was Herculean. . . . [A]ll timekeepers were made available; there was a stipulation reached that it wouldn't be necessary. . . . Okay, so it's obvious that I thought about this and after doing all of this merging of factors, consideration of factors, I'm just going to come out with a number. And it's hard to just do that without repeating over and over what I considered because it's scary and it's hard. But I'm going to tell you, after looking at all of this, looking at this litigation for six years, wishing desperately to shake the dust of this case from my feet, looking at the quality of this litigation, I feel a reasonable, necessary and proper attorneys fee of seventy million dollars.

After carefully reviewing the arguments presented in brief, the record and its exhibits, and the trial court's thorough oral reasons for ruling, we find that it did not abuse its discretion in awarding $70,000,000 in attorney fees. Accordingly, this assignment lacks merit.

<u>*Costs*</u>

We review the trial court's assessment of court costs for abuse of discretion. *Bentley v. Fanguy*, 09-822 (La.App. 3 Cir. 10/6/10), 48 So.3d 381, *writ denied*, 10-2854 (La. 2/25/11), 58 So.3d 457. "The trial court, in taxing court costs, is given great discretion and may assess those costs in any manner it deems equitable. La.Code Civ.P. art. 1920." *Id*. at 389. We find no abuse of discretion with the trial court's assessment of costs to Janssen. The Attorney General successfully obtained judgment against the corporation, and the trial court had vast discretion in assessing costs. *See Bentley,* 48 So.3d 381; *Trahan v. Asphalt Assocs., Inc.*, 01-311 (La.App. 3 Cir. 10/17/01), 800 So.2d 18; and *Este v. State Farm Ins. Cos.*, 96-99 (La.App. 3 Cir. 7/10/96), 676 So.2d 850. Accordingly, this assignment lacks merit.

*Interest*

In his answer to Janssen's appeal, the Attorney General raised a single issue: whether the trial court erred by refusing to award interest from the date of judicial demand on both the judgment rendered by the jury and the award of attorney fees made by the trial court. The grant of judicial interest is governed by La.Code Civ.P. art. 1921, which states that "[t]he court shall award interest in the judgment as prayed for or as provided by law." Louisiana courts have interpreted this statute as creating a mandate that trial courts award interest if it is prayed for or provided by law. *See Bickham v. Bickham*, 02-1307 (La.App. 1 Cir. 5/9/03), 849 So.2d 707. "[T]he date on which judicial interest begins to accrue [is] subject to the manifest error standard of error." *Hall Ponderosa, LLC v. Petrohawk Properties, L.P.*, 11-1056, p. 4 (La.App. 3 Cir. 4/4/12), 90 So.3d 512, 517. *See also*, *Ashy v. Trotter*, 04-612 (La.App 3 Cir. 11/10/04), 888 So.2d 344, *writ denied*, 05-180 (La. 3/24/05), 896 So.2d 1045.

Janssen did not challenge the portions of the judgment awarding the Attorney General interest. Moreover, an examination of the Attorney General's Fifth Supplemental and Amending Petition shows that he did pray for interest. Accordingly, the question before us today is whether the trial court erred in its determination of when the awards of interest should begin accruing.

In his answer to appeal, the Attorney General argues that the trial court erred in its fixing of the start dates for the accrual of interest, as interest should have been computed from the date of judicial demand. In support of his argument, the Attorney General cited the definition of "Recovery" in the MAPIL statute, which provides that such term means "the recovery of overpayments, damages, fines, penalties, costs, expenses, restitution, attorneys' fees, or interest or settlement amounts." La.R.S. 46:437.3(24). He then asserts that "[i]t is clear, as evidenced by the inclusion of the term 'interest' in the definition of 'Recovery' as referenced hereinabove, that the legislature intended that all sums awarded under R.S. 46:438.6, entitled 'Recovery,' would include interest on all sums awarded." (Emphasis omitted). He further supports his argument that interest should begin running from the date of judicial demand, rather than judgment, by differentiating the instant case from *Sher v. Lafayette Insurance Co.*, 07-2441 (La. 4/8/08), 988 So.2d 186 (the supreme court determined that interest on penalties accrues from the date of judgment), because in La.R.S. 22:658, the statute at issue in *Sher*, penalties and attorney fees were not automatic, but in the MAPIL statute, attorney fees "shall" be assessed against any person found to violate La.R.S. 46:438. Because the award of attorney fees for MAPIL violations was automatic and mandatory once the jury found that Janssen engaged in fraud and misrepresentation, the Attorney General submits that interest on the attorney fee award should begin accruing from the date of judicial demand. Contending that *Sher* is distinguishable

from this matter, the Attorney General argues that interest on the jury's award of penalties should also be calculated from the date of judicial demand.

Janssen argues that we "should reject the Attorney General's frivolous contention that because MAPIL's statutory definition of "Recovery" refers to interest and indicates that a person found to have violated the statute "shall" be liable for attorney fees, the Legislature silently prescribed imposition of interest from the date of judicial demand."

The jury found that Janssen committed 35,542 violations of MAPIL and that a civil penalty of $7,250 should be imposed against it for each of those violations. The trial court directed that interest on the jury's award should accrue from October 14, 2010, the date the jury rendered its verdict. As mentioned previously, the trial court determined that a reasonable attorney fee to compensate the Attorney General for his efforts in pursuing this matter was $70,000,000. The trial court directed that interest on that portion of the judgment should accrue from February 11, 2011, the date it rendered its oral reasons for judgment.

Given the highly complicated nature of this matter and the fact that no other Louisiana court has ever before assessed penalties against a pharmaceutical company under Louisiana's MAPIL statute, we conclude that the trial court did not commit manifest error in its determination of when interest should begin accruing on the penalties awarded by the jury and on the attorney fees that it awarded. Accordingly, the Attorney General's answer to appeal is denied.

*JNOV*

In its eighteenth assignment of error, Janssen asserts that the trial court erred in denying its JNOV and alternatively its Motion for New Trial. A motion for JNOV is governed by La.Code Civ.P. art. 1811 and is only warranted "when the facts and inferences point so strongly and overwhelmingly in favor of one party

27

that the trial court believes that reasonable persons could not arrive at a contrary verdict." *Elfers v. AIG Nat'l Ins. Co.*, 11-596, p. 3 (La.App. 4 Cir. 11/16/11), 80 So.3d 585, 587 (quoting *Joseph v. Broussard Rice Mill, Inc.*, 00-628 (La. 10/30/00), 772 So.2d 94). Motions for JNOV require stringent review because they deprive the parties of their right to have all of their disputes resolved by a jury of their peers. *Templet v. State*, 00-2162 (La.App. 1 Cir. 11/9/01), 818 So.2d 54.

The trial court's decision to grant or deny a motion for JNOV requires it to balance its obligation to insure that justice was accomplished against the deference afforded to a jury's verdict. *Matthews v. Arkla Lubricants, Inc.*, 32,121 (La.App. 2 Cir. 8/18/99), 740 So.2d 787. Appellate courts review a trial court's grant or denial of a JNOV for error "by using the [] criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences [presented at trial] point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict?" *Joseph*, 772 So.2d at 99. "If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied." *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829, 832 (La.1991). A motion for new trial can be joined with the motion for JNOV or can be prayed for in the alternative. La.Code Civ.P. art. 1811.

The grant of new trial is governed by La.Code Civ.P. arts. 1971-73. "A new trial to be granted . . . to all or any of the parties and on all or part of the issues, or for reargument only." La.Code Civ.P. art. 1971. The code mandates that a trial court grant a new trial when the judgment is clearly contrary to the law and the evidence, when a party discovers new evidence that could not have been discovered before or during trial, and when impartial justice was not done because

28

the jury was bribed or behaved improperly. La.Code Civ.P. art. 1972. Finally, "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." La.Code Civ.P. art. 1973. Unless an abuse of discretion can be demonstrated, an appellate court cannot reverse a trial court's decision to grant or deny a motion for new trial. *Harbor v. Christus St. Frances Cabrini Hosp.*, 06-593 (La.App. 3 Cir. 11/2/06), 943 So.2d 545.

In accordance with *Joseph* and *Anderson*, we have carefully reviewed the record in its entirety to determine whether the facts and evidence point so strongly in favor of Janssen that reasonable people could not have arrived at a contrary verdict. We find that the record is rife with evidence and facts that could be interpreted in favor of either party; accordingly, JNOV was properly denied. We also reviewed the record to determine whether the trial court abused its discretion in denying Janssen's alternative motion for new trial. We find that Janssen did not present evidence or argument supporting any of the three peremptory grounds provided for in La.Code Civ.P. art. 1972. As the granting of a motion for new trial based on La.Code Civ.P. art. 1973 is discretionary, we find that the trial court did not abuse its discretion in denying Janssen's motion for new trial pursuant to Articles 1972 or 1973. Accordingly, this assignment lacks merit.

### The Claim Was Based On Alleged FDA Violations

Whether the trial court erred in allowing the Attorney General to pursue a MAPIL claim based on alleged FDA regulatory violations is Janssen's second assignment of error. Closer inspection of its brief supports the conclusion that Janssen's argument is two-fold: first, the DDMAC letter should not have been introduced into evidence and the Attorney General should not have been permitted to center its case on this piece of inadmissible hearsay; and second, the Attorney

29

General cannot seek to enforce FDA regulations through MAPIL. For the following reasons, this assignment lacks merit.

We addressed the first prong of Janssen's argument in our discussion on evidence and need not repeat our reasons for finding that the trial court was not manifestly erroneous in admitting the DDMAC letter.

Janssen's argument that the Attorney General sought to enforce FDA regulations through MAPIL is unfounded. The MAPIL statute allows the Attorney General to bring a claim against any person who knowingly presents or causes to present false or fraudulent claims or knowingly engages in misrepresentation to obtain or attempt to obtain payment from medical assistance programs. The jury was presented with overwhelming evidence, and, at the end of the trial, they were charged with determining seven factual issues, each of which focused solely on the MAPIL statute and the relief provided therein. As the jury was questioned solely on the MAPIL statute and its applicability to the facts and evidence presented at trial, Janssen's assertion that the Attorney General sought to enforce FDA regulations through MAPIL is unfounded. Accordingly, this assignment lacks merit.

### Constitutional Arguments

In its third, fourth, and sixteenth assignments of error, Janssen raises the following constitutional arguments: the petitioning activity performed by Janssen was protected by the First Amendment; the judgment violates constitutionally protected speech; and the penalty violates the Eighth and Fourteenth amendments to the U.S. and Louisiana Constitutions.

The central focus of Janssen's argument is that the petitioning action it undertook was protected, so evidence thereof should not have been admitted and should not have been referenced by the Attorney General in his closing arguments.

30

We have previously addressed admissibility of evidence and closing arguments. As the trial court had broad discretion in admitting evidence and the Attorney General was free to refer to any admitted evidence during his closing arguments, we find that this assignment lacks merit.

Janssen then asserts that the record is insufficient to establish a MAPIL claim and only supports the conclusion that the Attorney General and Janssen had differing scientific opinions, which renders the judgment unconstitutional. We have already addressed Janssen's claim that the evidence in the record was insufficient to establish a MAPIL violation and found that the argument lacked merit. Accordingly this assignment lacks merit.

Finally, Janssen urges that the civil monetary penalty is unconstitutionally excessive. Louisiana Revised Statutes 46:438.6 provides for a civil monetary penalty of "up to ten thousand dollars for each false or fraudulent claim [or] misrepresentation." The penalty assessed was $7,250 for each violation, which was well within the statutory limits. "Statutes are presumed to be constitutional." *State v. Granger*, 07-2285, p. 8 (La. 5/21/08), 982 So.2d 779, 786. By extension, a penalty that is within statutory limits is also presumed to be constitutional. Accordingly, this assignment lacks merit.

## DECREE

After carefully reviewing the record, we find that the trial court was not manifestly erroneous in casting Janssen with civil monetary penalties, attorney fees, and costs for its violations of Louisiana's MAPIL statute. We also find that the trial court was not manifestly erroneous in its determination of when interest should begin accruing on both the judgment of the jury and on the award of attorney fees. Accordingly, the judgments appealed are affirmed in their entirety. Costs are cast to the defendants.

31

**AFFIRMED.**